# VOGT *v.* GRAFF AND VOGT.

### APPEAL FROM THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 73.  Argued November 17, 1911.—Decided January 9, 1912.

The rule in Shelley's case is a rule of property in the District of Columbia, and the question for this court to determine is not whether it has or has not a legal foundation, or is or is not a useful rule of property, but whether it applies to the case in controversy.

Where the testator directs that on the sale of his real estate the proceeds be divided and paid over to his heirs at once, except the share of a specified heir which shall be paid to trustees to be by them invested, the income thereon to be paid to such heir, the principal to be paid to his heirs after his death, the application of the rule in Shelley's case would destroy the radical distinctions intended by the testator, and the rule does not apply.

Notwithstanding the peremptory force of the rule in Shelley's case, where there are explanatory and qualifying expressions showing a clear intention of the testator to the contrary, the rule must yield and the intention prevail. *Daniel* v. *Whartenby*, 17 Wall. 639.

A condition of the rule in Shelley's case is that the particular estate and the estate in remainder must be of the same quality, both legal or both equitable, and where the former is equitable and the latter is legal, the rule does not apply and the two estates do not merge.

*Quære:* Whether in the case at bar the estate in remainder is legal or equitable.

*Quære:* Whether the rule in Shelley's case is applicable to personal property.

33 App. D. C. 356, affirmed.

THE facts, which involve the construction of a will made by a resident of the District of Columbia, are stated in the opinion.

*Mr. John C. Gittings*, with whom *Mr. Justin Morrill Chamberlin* was on the brief, for appellant:

Until the court below rendered the decision in this

case, it was conceded that the "Rule in Shelley's Case" was applicable to personal property in this jurisdiction. *Garth* v. *Baldwin*, 1755; 2 Vesey Sr., Ch. Rep. 646. *Horne* v. *Lyeth*, 4 Harris and Johnson, 435, holds this case was binding authority, and it has ever since been followed in the Maryland courts. See also *Warner* v. *Sprigg*, 62 Maryland, 14, and *Hughes* v. *Nicklas*, 70 Maryland, 482; *Engle* v. *Mades*, 25 Wash. Law Rep. 220; *Simms* v. *Georgetown College*, 1 App. D. C. 79, 80.

If the rule has any application to personal property at all, it has the same force and effect as when applied to real estate. If applied by analogy, it must be applied, of course, under the same circumstances and conditions; consequently it is a rule of law and not a rule of construction.

Being a rule of law, it is inflexible and will necessarily override any intention of a testator to the contrary in those cases where it is applicable. *Horne* v. *Lyeth, supra.*

There may be a class of cases involving executory trusts where courts have not applied the rule. But in the case at bar, by no possible torture of the testator's language can it be construed to read as an executory trust. *Neves* v. *Scott*, 9 How. 211; 2 Underhill on Wills.

A mere direction to convey the legal title or to pay over a fund where the limitations of the trust are complete, does not alone make a trust executory. *Rowan* v. *Chase*, 94 U. S. 818; *Cushing* v. *Blake*, 30 N. J. Eq. 689, 670; *Edgerton* v. *Lord Brownlaw*, 4 H. L. C. 1210. The "Rule in Shelley's Case" must be applied in a court of equity to the same extent as in courts of law, when the trust estate is executed. Preston on Estates, 362; Ferne on Remainders, 157; *Bale* v. *Coleman*, 1 P. Williams, 142; *Simms* v. *Georgetown College, supra.*

The very moment we attempt to treat the "Rule in Shelley's Case" as subservient to a testator's intention, we absolutely efface and obliterate it as a rule of law, and turn it into a mere rule of construction. If this can be

done when the subject-matter is personalty, what analogy is there in its application to real estate? None.

For authority for its decision the court below cites a case long since overruled on every point upon which it was decided, viz.: *Bacon's Appeal*, 57 Pa. St. 504, 514. See *Grimes* v. *Shirk*, 169 Pa. St. 174, 181; *McCann* v. *Berkley*, 204 Pa. St. 214; *Shopley* v. *Diehl*, 203 Pa. St. 566, 569.

The rule of construction is that if technical words are used they must be given their primary legal meaning, unless there is something on the face of the will that shows not only that they were not so used by the testator, but will clearly show in what sense they were used. *Daniel* v. *Whartenby*, 17 Wall. 643; *Van Grutten* v. *Foxwell*, reported in Appeal Cases, L. Rept. (1897), 658, 684.

Although the Chief Justice of the court below quotes the rule of construction laid down by this court in *Daniel* v. *Whartenby*, *supra*, he immediately thereafter ignores it.

There are no inconsistent words in that paragraph of the devise in question, and there is a total absence of any qualifying words in that or any other paragraph which shows or tends in any manner to show that the testator used the word "heirs" in the sense of "children."

The word "heirs" may or may not be appropriate; this would entirely depend upon the sense in which the testator used it. From the context of the will there is absolutely no ground for a court saying that the word "heirs" was not used by the testator in its primary technical sense.

That the testator was a layman does not appear anywhere in the record, or whether he was learned in the law, as the record is silent upon that point, unless it be the will itself, which shows beyond question that it was prepared by one skilled in legal lore, and unquestionably knew the legal difference between the words "heirs" and "children."

When we find him using the word "heirs" as a designation of those who were to take the appellant's share after death, it can hardly be said that he meant to use the word

"heirs" in any other sense than that in which he had previously used it: that is, its primary legal sense—those who would take real estate if plaintiff should die intestate.

If the court below is right and the word "heirs" was construed to mean those who would take under the statute of distribution—and for instance, suppose the infant Mathilda should die before her father—the widow of the testator, appellant's mother, would then take appellant's entire share, and his brothers and sister, who were the testator's "heirs," would be entirely cut off. Could this have been the testator's intention? Hardly so. That it was the testator's intention that appellant should have only a life estate in the fund may be perfectly true, but that would not in any manner alter the sense in which the word "heirs" was used.

It might be conceded that in 99 out of 100 cases where the "Rule in Shelley's Case" has been applied to a will, the testator's intention has been that the ancestors should take only a life estate. The inquiry has always been, What was his intention as to the remainder? Did he use the word "heirs" as a word of limitation? If not, did he use it in some other sense, and if he did, in what sense did he use it? That is the sole inquiry, and for that reason the fact that a testator intended to give the ancestor only a life estate can in no way throw light upon his intention or show what he meant when using the word "heirs" as a designation of those who were to take a remainder.

Under the tenth paragraph of the will, the ancestor, appellant, and heirs take the same quality of estates; both are equitable. See Hill on Trustees, 288; Perry on Trusts, § 311; *Denton* v. *Denton*, 17 Maryland, 43; *Warner* v. *Sprigg*, 62 Maryland, 14; *Long* v. *Long*, 62 Maryland, 68; *Glover* v. *Condell*, 163 Illinois, 566; see also *Garth* v. *Baldwin*, 2 Vesey, 648; *Engle* v. *Mades*, 25 Wash. L. Rep. 229; *Webb* v. *Webb*, 1 P. Williams, 132; *Robinson* v. *Fitzherbert*, 2 Bro. Ch. Rep. 127.

The cases do not sustain the opinion of the court below to the effect that as the trust is expressly limited to the life estate of Fred. H. Vogt, the remainder to the heirs is a legal estate, and hence there can be no union of the two estates under the "Rule in Shelley's Case." *Denton* v. *Denton*, 17 Maryland, 407; *Owens* v. *Crow*, 62 Maryland, 491, distinguished.

*Westcott* v. *Edmonds*, 68 Pa. St. 34; *Renzeihauzen* v. *Kaiser*, 48 Pa. St. 351, and *Bacon's Appeal*, 57 Pa. St. 505, cited in appellee's brief, were all cases dealing with trusts relating to real property; neither do cases apply which are suits brought by the *heirs* after the death of the ancestor, claiming that the trust has ceased, as *Denton* v. *Denton; Owens* v. *Crow, supra; Hooper* v. *Felgner*, 80 Maryland, 262; *Long* v. *Long*, 62 Maryland, 33, and *Lee* v. *O'Donnell*, 95 Maryland, 538.

*Mannerback's Estate*, 133 Pa. St. 342; *Mercer* v. *Hopkins*, 88 Maryland, 292, and *Mercer* v. *Safe Deposit Co.*, 91 Maryland, 102, cited by appellee are not applicable, and do not throw any light upon the case at bar.

To disregard the settled rules of interpretation, sanctioned by a succession of ages and by the decisions of the most enlightened judges, under pretext that the reason of the rule no longer exists, or that the rule itself is unreasonable, would not only prostrate the great landmarks of property, but would introduce a latitude of construction boundless in its range and pernicious in its consequence.

*Mr. J. J. Darlington* and *Mr. Leon Tobriner* for appellees.

Mr. Justice McKenna delivered the opinion of the court.

Bill in equity filed in the Supreme Court of the District of Columbia by the children of John L. Vogt to determine the meaning of a clause in the latter's will.

The defendants in the case, appellees here, were Charles Graff and Frederick C. Gieseking, executors and trustees named in the will, and Matilda S. Vogt, infant daughter of one of the complainants, appellant here, Frederick H. Vogt.

The part of the will to be construed is as follows:

"All the rest and residue of my real estate, shall, when my youngest surviving child attains the age of 21 years or one year thereafter in the discretion of my executors, be sold by my executors at public auction after due notice in the news papers of this city. The proceeds of said sales shall be then divided among my heirs, share and share alike, and paid over to them respectively at once, excepting the share coming to my son, Fred H. Vogt. Said share shall be paid to Charles Graff and Frederick C. Gieseking, as trustees, by them invested, the income therefrom to be paid said Fred H. Vogt, the principal to be paid to his heirs after his death."

Regarding this provision as a simple composition of English words, we should have no difficulty in deciding that the testator intended to give to Frederick H. Vogt a life estate in the designated share. But it is contended that the meaning of the testator is determined otherwise by the rule in Shelley's case. The rule is thus laid down: "Where the ancestor, by any gift or conveyance, taketh an estate of freehold, and in the same gift or conveyance an estate is limited, either mediately or immediately, to his heirs in fee or in tail, the 'heirs' are words of limitation of the estate and not words of purchase." 1 Co. 104; *Daniel* v. *Whartenby,* 17 Wall. 639, 641; *Green* v. *Green,* 23 Wall. 486, 488.

It will be observed that under the rule by a technical circumlocution one estate only is created, though two parts are expressed, a particular estate for life with a remainder to the heirs of him who takes the particular estate. The rule, therefore, has been a fruitful source

of controversy. On the one hand it has been praised as having a substantial foundation and necessarily expressing and enforcing essential legal distinctions in the transfer of property; to be, indeed, the very opposite of a technical rule and one "established through a long course of decisions extending over a great many generations," and declared therefore to be a rule of substance in order to give effect to the intention of the grantor or testator. On the other hand, it is attacked as oftener defeating intention than executing it, being applied as an absolute and peremptory obligation to convey or devise an estate in fee simple even against an express declaration to the contrary. Invective, therefore, has been employed against it, and even ridicule; and English and American judges, while yielding to it, have pronounced it unjust. We, however, need not enter into the field of controversy. Whether it had a legal and substantial foundation when first pronounced or yet has, whether it is a useful rule of property or part of the debris of an ancient system having now only the mischievous vitality of frustrating the intention of a grantor or testator, we need not consider.

It is conceded to be a rule of property in the District of Columbia, and we are brought to the question whether, consistently with it, the intention which we have seen Vogt has expressed may be executed.

The statement of the rule we have given. There are certain conditions attached to it which give precision to its application. One of these is that the remainder after the particular estate must be to heirs of the whole line of inheritable blood, designating those who are to take from generation to generation. And they must be heirs of him who takes the particular estate, and by devolution from him.

This is important to be observed. The heirs must take from the first taker and not be a description of a class taking from the testator, becoming themselves,

"the root of a new succession." *Guthrie's Appeal*, 37 Pa. St. 9. Hargrave, in his Law Tracts, states the test to be "whether the party entailing means to build a succession of heirs on the estate of the tenant for life." If he does not, but intends to describe a class taking from him, the rule does not apply. We proceed to illustrate this.

*Kemp* v. *Reinhard*, 228 Pa. St. 143, expresses the principle, and its facts bring it into close similarity to the case at bar. In that case the testatrix gave to her son, Jacob E. Kemp, the use and income of seven enumerated properties, "for and during his lifetime." Then followed this clause: "And immediately after the decease of the said Jacob E. Kemp, I give and devise the above-described seven tracts or pieces of land devised to him herein for life to his issue in fee. Should he, however, die without leaving issue living, I give and devise the same unto my son Pierce G. S. Kemp, his heirs and assigns in fee." The court said (p. 147):

"Though the intention of the testatrix may have been to give only a life estate to the appellant, if in the devise there was a limitation of the estate to his heirs to take by devolution from him at his death, her intention is overridden by the rule in Shelley's case; but in every case in which the application of that rule is involved the first question is whether the devisor or grantor intended a limitation of the remainder in fee or in tail as such to the heirs of the first taker, or that there should be the root of a new succession taking directly from the devisor or grantor as purchasers. When the latter intention appears the rule has no place and the intention must be given effect".

And further (p. 147):

"'It is very carefully to be noted, that in searching for the intention of the donor or testator, the inquiry is not whether the remainder-men are the persons who

would have been heirs, had the fee been limited directly to the ancestor. The thing to be sought for is not the persons who are directed to take the remainder, but the character in which the donor intended they should take. In the very many cases in which the question has arisen, whether the rule was applicable, the difficulty has been in determining whether the intention was that the remainder-men should take as heirs of the first taker, or originally as the stock of a new inheritance.' *Guthrie's Appeal*, 37 Pa. 9."

*Hall* v. *Gradwohl* (1910), 113 Maryland, 293, is also some-what similar to the case at bar, and we quote the more readily since it is said that the rule in Shelley's case pre-vails in the District of Columbia because it prevailed in the law of Maryland. After discussing the rule the court said that "it is not a favored" one "in the law of Maryland, although the court will never refuse to apply it in a proper case." And it was decided that where the particular intention of the testator is not to use the words of inheritance in their full legal sense, but "as mere *descriptio personarum* or a particular designation of in-dividuals who were to take as purchasers at his death," the rule should not prevail. The will passed on made certain bequests and devises and then provided: "The balance of my estate to be equally divided among my five children or their heirs, share and share alike," with this proviso: "That the portion to which my daughter Sarah Gradwohl may be entitled shall be invested in some safe stocks or other securities, the said Sarah Gradwohl to receive the income from the same during the term of her natural life, and at her death to be equally divided among her children or legal heirs." The court refused to apply the rule. To apply the rule it was said that the words "children or legal heirs" would have to be treated as words of limitation, that is, as "marking out the extent and duration of her interest." This construction the

court rejected as consonant with "neither reason, policy, justice nor equity," and could only be supported by giving to the words " 'legal heirs,' which are superadded to the word 'children,' the arbitrary meaning placed upon them by an artificial rule of law." The court, after an analysis of the will, decided that it plainly manifested a particular intention to use those words as mere *descriptio personarum* as a particular designation of individuals who were to take as purchasers at the death of the testatrix.

The conclusion of the court was based upon the special provision of the will which directed that the portion given to the testatrix's daughter Sarah should be invested in some safe stocks or securities, and that Sarah should "receive the income from the same during the term of her natural life," and should be at her death "equally divided among her children or legal heirs." This language, the court added, manifested a particular intention on the part of the testatrix "to use the words as mere *descriptio per-sonarum.* . . . . In such cases, under all of the authorities, the rule in Shelley's case does not apply."

A like intention is expressed in Vogt's will. His real estate, after satisfying particular devises, is directed to be sold when his youngest surviving child shall attain the age of twenty-one years. The proceeds he directs "shall be then divided among my heirs, share and share alike, *and paid over to them, respectively, at once,* except the share coming to my son, Fred H. Vogt. Said share shall be paid to Charles Graff and Frederick C. Gieseking, as trustees, by them invested, the income therefrom to be paid to said Fred H. Vogt, the principal to be paid to his heirs after his death." If the rule in Shelley's case be applied, it will destroy all of the distinctions that the testator has expressed. The distinctions are radical, and must be looked to in ascertaining his intention. And this was done, as we have seen, in *Hall* v. *Gradwohl, supra,* and it was done, too, we may say, in *Kemp* v. *Reinhard,*

*supra.* The latter case has not the infirmity that counsel for appellant ascribes to some of the earlier Pennsylvania cases of regarding the rule as one of construction, yielding to and not overriding the intention, as, it is contended, its unflinching and dominating character requires.

The intention of the testator, therefore, may have some sway. We may inquire, at least, as to his intention in the use of the word "heirs," whether as taking from him or as taking from the life tenant. The rule "is silent until the intention of the grantor or devisor is ascertained." *Kemp* v. *Reinhard, supra.*

Of Vogt's intention we have no doubt. It is made clear by the distinctions to which we have adverted. To his other children their shares are to be delivered immediately upon the sale of the real estate. To appellant there is nothing of his share to be delivered at all. It is to be delivered to others for him, he to receive, not the body of the share, but only the revenue from it. He is separated from it completely. He does not handle it or direct its investment, and after his death, the testator, through trustees he has selected, directs it to be delivered to persons designated by him, or, to use the language of the cases, described by him as taking from him. Opposing reasoning, it is true, might be brought forward, but this court, while asserting and recognizing the peremptory force of the technical terms of the rule, has said: "But if there are explanatory and qualifying expressions, from which it appears that the import of the technical language is contrary to the clear and plain intention of the testator, the former must yield and the latter must prevail." *Daniel* v. *Whartenby, supra.*

Another condition of the application of the rule is that the particular estate and the estate in remainder must be of the same quality, both legal or both equitable. The Court of Appeals decided that such condition did not exist and, on that ground, as well as on that which we have discussed, held adversely to appellant. In other words, the

court decided that the estate given to appellant was equitable and the estate devised to the daughter legal, and that, therefore, the estates did not merge. It is admitted that the estate taken by appellant is equitable; the contentions of the parties turn upon the character of the estate given to his daughter. We will not consider the contentions, nor whether the rule is applicable to personal property. We rest our decision on the ground discussed by us.

*Judgment affirmed.*