[No. 26488. Department Two. December 2, 1937.]

*In the Matter of the Estate of* AUGUST JOHNSON, *Deceased.*

ELLEN JOHNSON, *Individually and as Executrix, Appellant,* v. SEATTLE-FIRST NATIONAL BANK *et al., Respondents.*[1]

[1]Reported in 73 P. (2d) 755.

440

*Henry Gulliksen (John B. Van Dyke, of counsel),* for appellant.

*Poe, Falknor, Falknor & Emory,* for respondent Seattle-First National Bank.

ROBINSON, J.—August Johnson died in Seattle in May, 1933, leaving a wife, Ellen Johnson, surviving, but no children. His will declared all property owned by himself and wife to be community property, and nominated Ellen Johnson as his nonintervention executrix. It bequeathed five thousand dollars to a Swedish church and five thousand dollars to a Swedish sanatorium, and devised and bequeathed the rest and residue of the deceased's community interest to Dexter Horton National Bank, now the Seattle-First National Bank, in trust, as follows:

"THIRD: . . . (3) The rest and residue of my Estate I give, devise and bequeath as follows: In the event that my wife should survive me and only in that event I give, devise and bequeath said rest and residue unto DEXTER HORTON NATIONAL BANK, a Banking and Trust corporation, organized under the laws of the United States, with its principal place of business at Seattle, Washington, in trust and upon the trust and with the intent and purpose that my said trustee shall manage, administer and distribute the said devise and bequest for the sole benefit of my said wife Ellen Johnson during her natural life-time and upon her death to distribute the remainder unto the persons hereinbelow described; and I direct my said trustee to invest and reinvest the principal belonging to my said wife and to reduce to cash and make conveyance by sale or otherwise of any real or personal property, and I hereby give my said trustee ample, full and absolute power to make sales and transfers of property, real or personal, to execute and deliver ample deeds of conveyance, bills-of-sale or other instruments conveying, transferring and vesting to and in the purchaser in every case the full right and title as I shall have had therein at the time of my death, and the purchaser shall not be required to look to the application of purchase monies, and that my trustee shall pay and deliver to my said wife all interest accruals resulting from the investment and re-investment of the said principal, during her natural life-time, and in addition thereto my said trustee shall and may expend and deliver to my said wife from the principal of this devise and bequest, as well as the aforedescribed interest, such amounts as my said trustee may deem proper for the maintenance and support, medical services, comfort and well-being of my said wife, it being expressly my will that my said trustee having consideration of the community half interest that my said wife shall receive from our community estate, and for her financial circumstances from time to time, and having consideration for her requirements and station in life, shall not be limited to the interest accruals aforedescribed but shall be authorized to take and deliver to her such part or portions from the principal from time to time, if necessary

and expedient in the judgment of my said trustee in providing fully for the wants, requirements, comfort and well-being of my said wife, during her natural lifetime.

"Upon the death of my said wife I direct my said trustee to pay and deliver any and all monies, sums and balances remaining of said devise and bequest to the following designated persons in the following proportions, namely: One-half thereof unto my kin; namely, one-half thereof unto my sister AUGUSTA PERSSON, residing at VARA, PROVINCE OF SKARABORG, SWEDEN, and unto her heirs in the event that she should predecease my said wife; and the remaining one-half thereof to my niece IDA SWANSON, residing at Spokane, Washington, and to her heirs in the event that she should pre-decease my said wife.

"The remaining one-half thereof shall be paid over to the kin of my wife, namely, to such persons as shall be her heirs as of the date of her death."

The will was promptly probated, and Ellen Johnson qualified as executrix. The estate was appraised at $59,063.17, and a decree of solvency entered. The chief asset was a $30,000 promissory note secured by a mortgage on an apartment house situated at the corner of Olive street and Bellevue, in Seattle, known as the Eldora apartments. There was also another parcel of real estate appraised at $6,000, another appraised at $2,500, a deposit of $5,883.99 in a bank in Sweden, notes for $1,700 made by David Carlson, a demand note made by Turner & Pease Co., Inc., for $6,000, and another by the same maker for $2,000. There were also $225 cash on hand, the household furniture valued at $200, an automobile valued at $25, and fifty shares preferred capital stock of Puget Sound Power & Light Co. appraised at $750.

In due course of administration, that item of real property which was appraised at $2,500, the household furniture, automobile, and $250 in cash were set aside

to Ellen Johnson in lieu of homestead. The mortgage securing the $30,000 note was foreclosed, the Eldora apartments purchased at the sale in July, 1934, and the executrix has since operated it, no redemption having been made. Mrs. Johnson collected the $2,000 Turner & Pease Co. note and used this money and the $5,883.99 bank deposit principally for repairing and reconditioning the Eldora apartments.

At the time the hearing which led to this appeal was held, in September, 1936, the assets of the estate were the Eldora apartments, found by the court to be of the market value of $22,500, another parcel of real estate worth $6,000, and about $1,000 in cash. The claims against the estate had been paid, except a claim of one Anna Anderson for $2,000. The two $5,000 legacies had not been paid, nor had the inheritance taxes nor expenses of administration been settled. The court found that there were taxes due on the apartment about equivalent to the cash on hand. The court further found that, with reasonable care, the operation of the apartments might be expected to return a net of $3,000 per annum.

The particulars in the preceding paragraph are taken from the findings made by the court in the adversary proceeding out of which this appeal arises.

In April, 1936, Ellen Johnson, as executrix and individually, filed objections to certain findings of the supervisor of the inheritance tax division, coupling with it a petition for a construction of the will, in which she asked the court to find that the trust attempted to be created therein "is null and void, for uncertainty, ambiguity, and irreconcilability of its provisions," and to decree that she be the sole beneficiary of the residuary bequest. Seattle-First National Bank filed objections to the petition of the executrix for construction and, as the testamentary trustee under the

will, petitioned for an order directing Mrs. Johnson to distribute the estate. In this pleading, the bank alleged that the executrix had failed in her duty by the very act of attempting to have the trust declared invalid; and further, in that she had failed to furnish reports and accounts in connection with her operation of the apartment house, and that she had, ever since the probate of the will, been receiving an allowance of one hundred dollars per month and free rent in the apartment house, all to the diminution of the trust estate.

To this petition, the executrix made a number of denials, and the issues came on for trial in September, 1936, resulting in the decree appealed from, in which the trust was held valid, and it was ordered that the executrix forthwith collect the six thousand dollar Turner & Pease Co. note, apply the proceeds to the payment of the debts of the estate, the expenses of administration, and the inheritance tax, and within sixty days file a report; and that, upon the hearing thereof, she distribute the assets to the trustee, Seattle-First National Bank, subject to the unpaid legacies and the terms of the trust.

The brief on behalf of the executrix makes twenty-two assignments of error. We think that all of them can be included in three general assignments, namely, the court erred (1) in refusing to find the trust invalid for uncertainty; (2) in refusing to hold that, under the rule in *Shelley's* case, the residuary bequest vested full title in Ellen Johnson; (3) in granting the petition of the trustee for distribution and requiring the same to be made in sixty days.

We find nothing ambiguous or uncertain about this trust. The property to which it attaches is definitely fixed, by the first paragraph of the will, as the decedent's community one-half interest. The trustee

is definitely named, and the trustee's powers quite fully and accurately defined. The trustee, it is true, is given considerable discretion, but no more than is usual and familiar in cases where the obvious intent of the testator is to protect his widow and at the same time leave sufficient latitude to the trustee to use a part of the principal in providing for her unexpected and extraordinary requirements.

Nor are the remaindermen nor their interests at all uncertain. It is provided that, upon the death of decedent's wife, one-half of the trust property is to go to certain named relatives of the decedent, or, if they pre-decease his wife, to their heirs, and the other half to the heirs of his wife, "namely, to such persons as shall be her heirs at the date of her death." This makes their interests definitely ascertainable. They will take according to the statutory rules of descent.

The appellant insists, with much emphasis, that the trust must fail on the ground that Ellen Johnson is entitled to take complete title under the rule in *Shelley's* case. In general, the rule has not been favored in this country. Some states have abolished it by statute; others have provided, by statute, that it shall not apply to wills in defiance of the purely express intention of the testator. In other states, the same results have been obtained by judicial decisions, the courts taking the position that, as a rule of property, the rule in *Shelley's* case was suited to a feudal system of land ownership and was, therefore, unsuitable to our system. This court has, however, definitely rejected that idea, at least in so far as conveyances by deed are concerned, in *Fowler v. Wyman*, 169 Wash. 307, 13 P. (2d) 501.

It does not necessarily follow from the decision in *Fowler v. Wyman* that the rule applies to devises in

wills, in view of Rem. Rev. Stat., § 1410 [P. C. § 10037], and especially in view of § 1415 [P. C. § 10042] in which the courts are enjoined to have due regard to the true intent of the testator in carrying out and executing wills. On the other hand, the reasons given in *Fowler v. Wyman* for holding the rule not "incompatible with the institutions and condition of society in this state," would seem to apply as fully to devises by will as to conveyances by deed. We need not, however, determine that question in this case, for it is clear that Mrs. Johnson's estate is equitable and that of the remaindermen is legal.

"Where the estate limited to the ancestor is an equitable or trust estate, the two estates, under the rule in *Shelley's* case, will not coalesce in the ancestor, . . ."

The above quotation is from subd. (c) of Division X, page 1025, of a most thorough and comprehensive note on the rule in *Shelley's* case in 29 L. R. A. (N. S.) beginning at page 963 and continuing to page 1170. So many cases are therein cited in support of the principle that none need be cited here, except, perhaps, one or two decided after the note was published. See V*ogt v. Graff*, 222 U. S. 404, 32 S. Ct. 134, 56 L. Ed. 249; *In re Towne's Estate*, 260 Pa. St. 443, 103 Atl. 875. Other citations may be found in support of the text in 24 R. C. L. 897; Perry on Trusts (7th ed.), §§ 358-359.

Finally, with respect to this phase of the case, we quote briefly from page 323 of the American Law Institute Restatement of the Law of Trusts, published in 1935:

"The rule in Shelley's Case is not applicable where a legal interest is limited to a person for life and an equitable interest to his heirs, *nor where an equitable interest is limited to a person for life and a legal interest to his heirs.*" (Italics ours.)

The appellant points out that she is not only the owner in her own right of the one-half interest in the property of the estate, but that she is in possession of the other half as executrix of a nonintervention will, and, in addition, invokes Rem. Rev. Stat., § 1419 [P. C. § 9935], which would have given her the right to administer upon the community property irrespective of any provision of the will to the contrary. It is contended that the testamentary trustee has no standing to petition for distribution, and that the court has no jurisdiction to grant it, in that, in so doing, it violated the intention of the testator and deprived the estate of the benefits of the statute providing for nonintervention wills.

We are of the opinion that the testamentary trustee clearly has standing to petition for distribution. It is not only a legal legatee and devisee, but also a trustee with definite obligations to the remaindermen.

As to the second point, it may be said that it must be assumed that the testator also intended that the estate should be distributed within a reasonable time; and that, within a reasonable time, the residuary estate should come into the hands of his trustee. Our statutes contemplate that estates shall ordinarily be closed shortly after the six months' period allowed for filing claims. The will was probated on May 25, 1933, and the decree appealed from was entered on September 19, 1936.

It is said that there is no definite finding that the executrix failed to take care of and promote the interests of all the parties. That is true, but it is also true that the consequences of such a finding are not carried into the decree. Such a finding would have warranted the court in removing the executrix and requiring administration. Rem. Rev. Stat., § 1462 [P. C. § 9967]. Here, the court merely ordered that the

estate be wound up within sixty days, although it realized that the legacies could not be paid within that time and left their payment to the trustee. We think that this was within the court's discretion, and, while the time permitted for closing the estate was somewhat short, now that the order and decree have stood superseded for more than a year, the appellant can suffer no prejudice on that account.

The judgment and decree appealed from is affirmed.

STEINERT, C. J., HOLCOMB, BEALS, and BLAKE, JJ., concur.

