[No. 26665. Department One. January 20, 1938.]

FANNY E. FOWLER et al., Appellants, v. FLORENCE MAY LANPHER et al., Defendants, EVERETT TRUST & SAVINGS BANK, as Trustee, Respondent and Cross-appellant.[1]

[1]Reported in 75 P. (2d) 132.

*Bayley & Croson,* for appellants.

*Mulvihill & Anderson,* for respondent and cross-appellant.

SIMPSON, J.—The institution of this action was for the purpose of having two certain trusts determined.

On November 23, 1927, Homer T. Fowler, of Everett, Washington, husband of Fanny E. Fowler, and his six children, with their mother, were owners of all of the capital stock of the Alger Fowler Company, a corporation. On that date, the father, Homer T. Fowler, proceeded to make disposition of his estate and for the support of his wife in the event of his death. At that time, he and his wife and three of their children signed a trust agreement, referred to hereinafter as the Homer Fowler trust, which, omitting certain portions not necessary to be considered, provided:

". . . in order to promote and protect the value of said stock for their mutual benefit, and secure the satisfactory management of said corporation for a period of years, and for the further purpose of assuring to Fanny E. Fowler, one of the undersigned, a full income to her, after the death of her husband, Homer T. Fowler, of Four Hundred ($400) Dollars per month, in case the income paid to her, under the will of said Homer T. Fowler, after his death, shall not equal the said sum of Four Hundred ($400) Dollars per month, are desirous that the title of all of their stock, in said

corporation . . . shall be in the party of the second part, as Trustee, and that said stock shall be held together in one block and voted as a unit by said trustee, and shall continue from date for a period of twelve (12) years from and after the death of said Homer T. Fowler, provided that in case the said Fanny E. Fowler shall be surviving at the end of said period of twelve (12) years then this trust shall continue until the death of the said Fanny E. Fowler, . . .

". . . the powers hereby conferred on said trustee are and shall be irrevocable during the existence of said trust, by any parties to this instrument, their heirs, executors, administrators or assigns, except that this agreement may be rendered null and void and this trusteeship be dissolved and ended by the unanimous consent of the undersigned stockholders of said corporation, their heirs, executors, administrators or assigns. All dividends declared, upon the stock of said corporation, shall be by said trustee forthwith distributed among the undersigned stockholders of said corporation, their heirs, executors, administrators or assigns, provided, that in case the income received from the undersigned, Fanny E. Fowler, one of the undersigned, after the death of Homer T. Fowler, one of the undersigned, under the will of the said Homer T. Fowler, together with the dividends which said Fanny E. Fowler shall receive from her share of the capital stock of said corporation so assigned to said trustee, shall not equal the sum of Four Hundred ($400) Dollars per month, then the said Trustee is hereby authorized, empowered and directed, out of the dividends received by it, for the benefit of the balance of said stockholders signing this agreement, to pay to the said Fanny E. Fowler any deficiency in said monthly income."

At the same time and place, Homer T. Fowler had his will drawn, which was later, on November 25, 1927, duly executed by him. The pertinent provisions of the will, after giving his wife, Fanny E. Fowler, certain specified property, are:

"I give, devise and bequeath the residue of my estate, of every character and description, to the Everett Trust & Savings Bank, a corporation of Everett, Washington, and to its successors in trust for the uses and purposes hereinafter mentioned, that is to say:

"Out of the net income from said residue I direct that my wife, Fanny E. Fowler, be paid the sum of Four Hundred ($400) Dollars each and every month during her life, and that the balance of the income from said residue, be distributed in equal parts to my wife and to my children, Alger Fowler, George W. Fowler, Alice Jamison, Mildred Goldfinch, Katherine Wilson, and Helen Lanpher, or to the issue of such of my children as shall die during the existence of said trust, per stirpes and not per capita.

"The said trust, hereby created, is to continue for the period of twelve (12) years from and after my death, and in case my wife shall be surviving at the end of said period of twelve (12) years, then that said trust shall continue until the death of my said wife, and upon the termination of this trust the balance of the property remaining in the trust shall be equally distributed among my children hereinbefore named, share and share alike, and the issue of my children who shall have died prior to such distribution, per stirpes and not per capita.

"My children, George W. Fowler, Alice Jamison, Mildred Goldfinch, together with myself and wife, have this day entered into an agreement with the said Everett Trust & Savings Bank, of Everett, Washington, whereby all of the stock held by said last-named children and myself and wife, in the Alger Fowler Company, a corporation, has been assigned to said Everett Trust & Savings Bank, as Trustee, which agreement contains, among other things, the agreement upon the part of my said last-named children that in case the income from my property bequeathed under this will, together with the income which my wife shall receive from her share and my share of said capital stock, so assigned to said Trustee, shall not equal the sum of Four Hundred ($400) Dollars per month, then that said Trustee is authorized, out of the income received by it for the benefit of said last-named three children,

to pay to my wife any deficiency in said monthly income and it is my will and direction that in case my other three children, Alger Fowler, Katherine Wilson and Helen Lanpher, shall fail, within thirty (30) days after the date of this will, to assign their stock in said Alger Fowler Company to the said Everett Trust & Savings Bank, as trustee, and execute the agreement, heretofore made between my said children, myself and wife, with said Everett Trust & Savings Bank, with reference to the capital stock of the said Alger Fowler Company, or a similar one, then that the said Alger Fowler, Katherine Wilson and Helen Lanpher shall not participate or receive anything whatever· in the distribution of my estate disposed of under this will."

After the will was made, the children last named in the will joined with the others in the execution of the Homer Fowler trust agreement.

The defendant bank accepted the trust, qualified thereunder, and has been performing the same ever since.

Homer T. Fowler died February 3, 1928. The defendant bank then qualified as executor of his will. The estate was carried through the ordinary course of probate, and on October 2, 1928, the decree of distribution was entered whereby the residue of the estate was distributed to defendant bank as trustee under the testamentary trust.

On March 13, 1928, plaintiff Fanny E. Fowler, in her individual capacity, entered into an agreement with defendant Everett Trust & Savings Bank wherein she transferred to it certain real and personal property in trust, a portion of which agreement stated:

"To HAVE AND To HOLD the said property unto the said trustee, its successors and assigns in the trust hereby created, to hold, and manage, to sell or otherwise dispose of for the benefit of the trust estate hereby created, to invest and reinvest the same, and to receive the issues, income, interest, dividends and profits thereof, and to invest and reinvest the same,

and after paying all proper charges and expenses, including the fees of the trustee, to pay over and dispose of any and all moneys that may at any time be in this trust, as hereinafter directed."

The agreement further provides that the trustee shall pay to Fanny E. Fowler during her lifetime the income from such property. The agreement then recited:

"Upon the death of the party of the first part [Fanny E. Fowler] the trustee shall divide all that remains of said trust estate (and for the purpose of making such division shall have the authority, if it deems best, to reduce the same or any portion of it to cash) into six equal parts, and deliver and pay over one of such parts to my son, ALGER FOWLER, if he be living, or to his heirs if he be dead, and shall deliver and pay over one of such parts to my son, GEORGE W. FOWLER, if he be living, or to his heirs if he be dead, and deliver and pay over one of such parts to my daughter, ALICE JAMISON, if she be living, or to her heirs if she be dead, and shall deliver and pay over one of such parts to my daughter MILDRED GOLDFINCH, if she be living, or to her heirs if she be dead, and shall deliver and pay over one of such parts to my daughter, KATHERINE WILSON, if she be living, or to her heirs if she be dead, and shall deliver and pay over one of such parts to my daughter HELEN LANPHER, if she be living, or to her heirs if she be dead."

January 30, 1935, Mrs. Fowler prepared and served on defendant Everett Trust & Savings Bank a written revocation of the trust she had executed on March 13, 1928. This revocation of trust was signed and acknowledged by all of her children. The trustee refused to recognize such purported revocation, upon the ground that the heirs of the children of Fanny E. Fowler may have a contingent interest in the trust estate.

January 30, 1936, the plaintiffs who signed the trust agreement prepared and served on defendant Everett

Trust & Savings Bank their written revocation of the trust agreement made by themselves and Homer T. Fowler on the 23rd day of November, 1927. Defendant Everett Trust & Savings Bank refused to recognize such attempted revocation on the ground that the same was not made in conformity with the provisions in the trust agreement relating to the revocation thereof, in that such revocation was not joined in by the defendant bank, the testamentary trustee under the last will and testament of the decedent Homer T. Fowler, nor by all those beneficiaries interested in the trust sought to be revoked.

After the defendant had refused to recognize the attempted revocation of the trust agreements, plaintiffs instituted this action to compel such revocation. Besides the original signers of the Homer Fowler trust agreement, plaintiffs include three grandchildren of Mr. and Mrs. Fowler. The defendants named, other than the Everett Trust & Savings Bank, are minor grandchildren of Homer and Fanny Fowler, they being represented by J. W. Dootson, who was appointed their guardian *ad litem.*

The case was presented to the court upon the facts just related, and at the conclusion of the trial, judgment was entered denying revocation or termination of the Homer Fowler trust and granting a termination of the Fanny Fowler trust.

Plaintiffs appeal from that part of the judgment refusing a termination of the Homer Fowler trust, and defendant Everett Trust & Savings Bank appeals from that part of the judgment terminating the trust agreement made by Fanny Fowler. We will hereafter refer to plaintiffs as appellants and the defendant bank as respondent.

We will first consider the questions relating to the Homer Fowler trust.

The reason given by respondent for not consenting to the termination of this trust was that, in accordance with the trust agreement and the will of Homer Fowler, it, respondent, was the assignee of Homer T. Fowler, stood in his place after his death, and was a necessary party to the termination of the trust. On the other hand, appellants contend that they are the only ones to be benefited by the trust agreement and, all having signed the revocation of the trust, should be allowed to have their property set over to them. It is conceded that the reservation to revoke named in the trust agreement was proper and legal, and that, if the revocation here involved conformed to the agreement of all of the parties, the trust is ended.

In ascertaining the intention of the parties, it is necessary to construe the Homer Fowler trust agreement and his will together. Mr. Fowler was the moving spirit in the preparation of the trust agreement. He referred to it in his will and compelled three of his children to sign it in order to inherit. The instruments were prepared at the same time and executed within two days of each other.

Instruments, when so prepared and signed, when relating to the same subject matter, should be considered together. *Moore v. Baasch,* 109 Wash. 568, 187 Pac. 388; *Speirs v. Jahnsen,* 143 Wash. 297, 255 Pac. 117; 6 R. C. L. 852.

It is manifest from a study of these two instruments that the paramount intent of Homer Fowler was to protect his wife and to insure to her a definite income of four hundred dollars during each month of her life. This is an active trust, under which many duties are imposed upon the trustee, including the paramount one of insuring Mrs. Fowler an income of four hundred dollars per month. This trust is necessary to carry out that purpose.

2 Restatement of Law of Trusts, § 337, says:

"(1) Except as stated in Subsection (2), if all of the beneficiaries of a trust consent and none of them is under an incapacity, they can compel the termination of the trust.

"(2) If the continuance of the trust is necessary to carry out a material purpose of the trust, the beneficiaries cannot compel its termination."

Under the comment, following the above, it has this to say:

"*a. General rule.* The beneficiaries of a trust, if all consent and none is under an incapacity, can compel its termination if the continuance of the trust is not necessary to carry out a material purpose of the trust, although the period fixed by the terms of the trust for its duration has not expired. On the other hand, even though they all consent, they cannot compel the termination of the trust if its continuance is necessary to carry out a material purpose of the trust."

The case determinative of the question in issue is that of *Hayward v. Tacoma Sav. Bank & Trust Co.*, 88 Wash. 542, 153 Pac. 352. In that case, we had a situation very like the one at bar. There, a husband made a trust deed to certain property which the trustee was required to sell and pay the proceeds of such sale to his wife. At the time of making the trust deed, a will was made by the husband, which referred to the trust that he had already executed and then made the following provisions:

" 'Any real estate not covered by said trust deed is hereby willed in trust to the Tacoma Savings Bank & Trust Company, to be held and distributed in the same manner and form and subject to the same conditions as the real estate described in said trust deed. . . .' "

Upon the death of the maker of the trust agreement and will, an action was instituted to terminate the trust.

In that case we said:

"It is argued by the appellant that 'A trust will be discharged if all of the beneficiaries are *sui juris* and desire it, or when the entire beneficial interest passes to one person.' A number of authorities are cited to this effect. We think this is the rule where a trust is an inactive or dry trust; but where the trust is a special or active trust, we think this rule does not apply. It is plain in this case that the trust created is an active trust. The trustee, under the terms of the trust deed and under the will, which was executed at the same time and as a part of the same transaction, was required to pay all assessments and taxes of every kind against the properties, which were located in different counties in the state. Upon the death of Mr. Hayward, the trustee was required to advance to the appellant the sum of $200 on the first of each month. It is apparent, from a reading of the trust deed and the will, that it was the desire of Mr. Hayward, in making the trust deed and the will, to provide a comfortable allowance for his wife during her lifetime, and that then the property expressly reserved to her use should descend to her children; and, intending to relieve his widow from the burdens of caring for and looking after the property, it was placed in the hands of a trustee to actively care for and convey the same for the purposes mentioned in the trust deed. This is plainly an active trust; and it is clear, we think, that the fee of this property rests in the trustee."

It was the undoubted right of Mr. Fowler to make any provision in his will concerning the property and its disposition that he desired in order to carry out his ideas and purposes. This he could have done and did do, independent of the trust agreement.

The rule that a trust is indestructible after the decease of the settlor is a recognition of the power of the donor to reach into the future and control his donees and their methods of enjoyment. 4 Bogert on Trusts & Trustees 2936, § 1002.

It is our opinion that the trust created by Homer T.

Fowler was an active one necessary to be continued in force to carry out a very definite purpose, and that such trust cannot be determined without the consent of respondent.

■ We come now to the consideration of the cross-appeal of respondent Everett Trust & Savings Bank, which involves the construction of the Fanny Fowler trust agreement.

It is the contention of respondent that the trust created by Mrs. Fowler's agreement was an active one and cannot be terminated by the maker and her children named in the trust agreement, and further, that the agreement provided a contingent interest in the trustee for the benefit of the grandchildren of Mrs. Fowler.

The rule that an active trust cannot be terminated upon the consent of all the interested parties, does not apply when the trustor is living.

"(1) If the settlor and all of the beneficiaries of a trust consent and none of them is under an incapacity, they can compel the termination or modification of the trust, although the purposes of the trust have not been accomplished. . . .

"*Comment: a.* The rule stated in this Section is applicable where the settlor and the beneficiaries consent to a reconveyance of the trust property to the settlor and also where they consent to a conveyance of the trust property to the beneficiaries or to a third person. It is applicable whether or not the settlor is one of the beneficiaries." 2 Restatement of the Law of Trusts, 1033, § 338.

Where all of the parties were of full age and the trust was created by an arrangement to which the trustor and the *cestuis que trust* were the only parties, the trust may be terminated at any time. 26 R. C. L. 1211, § 53; *Matthews v. Thompson*, 186 Mass. 14, 71 N. E. 93, 104 Am. St. 550, 66 L. R. A. 421. See cases

collected in Annotation in 38 A. L. R. 965 to the effect that the immediate parties to a trust may by mutual agreement change or revoke the same.

" 'There seems to be a generally recognized principle that a trust may be revoked at any time by the consent of all of the interested parties, and the "interested parties" seem to have been held to be the settlor and the cestuis que trustent.' " *Riedlin's Guardian v. Cobb,* 222 Ky. 654, 1 S. W. (2d) 1071.

See, also, *Fidelity & Columbia Trust Co. v. Gwynn,* 206 Ky. 823, 268 S. W. 537, 38 A. L. R. 937.

■ Respondent's contention that the grandchildren have a contingent interest in the trust estate cannot be sustained. The trust agreement makes a definite provision for the division of property and designates just who shall have the divided shares. It makes no provision for grandchildren unless one of the children dies before the death of the maker of the trust agreement.

In *Burton v. Boren,* 308 Ill. 440, 139 N. E. 868, it was said:

"Where a grantor conveys a life estate with a remainder over to his heirs, the heirs do not take a remainder at all. The word 'heirs' will be regarded as defining or limiting the estate which the first taker has. In such case the heirs would take as reversioners by descent from the grantor and not under the deed."

The rule in Shelly's case is a part of the law of this state. *Fowler v. Wyman,* 169 Wash. 307, 13 P. (2d) 501.

In *Shufeldt v. Shufeldt,* 130 Wash. 253, 227 Pac. 6, the rule in Shelly's case was stated to be as follows:

"Under the rule in Shelly's case, if an estate for life is granted by an instrument and the remainder is limited by the same instrument, either mediately or immediately, *to the heirs of the life tenant,* the life tenant takes the remainder as well as the life estate."

Applying that rule, we find that the grandchildren are not interested parties in the trust agreement and

their consent is not necessary in order to compel its termination.

The Fannie Fowler trust is not embodied in a will, and therefore Rem. Rev. Stat., §§ 1410 and 1415 [P. C. §§ 10037, 10042] do not render the rule in Shelly's case inapplicable here. *Johnson v. Seattle-First Nat. Bank,* 192 Wash. 439, 73 P. (2d) 755.

Courts can only ascertain the intent of the parties to an agreement by the language used, and from that used in the trust agreement made by Mrs. Fowler, we conclude that she did not desire to give at that time any property to her grandchildren, some of whom were living when the trust agreement was executed. Had Mrs. Fowler intended the grandchildren to have an interest in the trust, she would, without doubt, have mentioned them in the agreement.

It is our opinion that those interested in the Fanny Fowler trust were Mrs. Fowler and her living children, and, all being of age and competent, were entitled to have her trust determined.

In view of the foregoing conclusions, it is not necessary to consider the contention of appellants that the Fanny Fowler agreement was testamentary in character and did not create a trust.

The judgment is affirmed.

STEINERT, C. J., HOLCOMB, MAIN, and GERAGHTY, JJ., concur.