[No. 35906.   *En Banc.*   October 5, 1961.]

CECIL RUBENSER *et al., Appellants,* v. ANTHONY J. FELICE *et al., Respondents.**

*Harvey Erickson* and *Howard E. Phillips* (*J. H. Felton,* of counsel), for appellants.

*Dellwo, Rudolf & Grant* and *Witherspoon, Kelley, Davenport & Toole* (*E. Glenn Harmon,* of counsel), for respondents.

HILL, J.—The sole issue in this case is whether, under the laws of this state, a testator may leave a remainder over after a life estate to the heirs of the person holding the life estate.

It seems obvious that a testator, whether he wants to protect his wife from improvidently dissipating valuable income property in her lifetime, as suggested in the present case, or who for any other reason wants to create a life estate, with the remainder over in others, should have that right. It is conceded that he does, except in the event that he names as the remaindermen the heirs of the life tenant. In that event, we are told that the Rule in Shelley's Case applies and the life tenant becomes vested with a fee-simple title, which is clearly what the testator was seeking to avoid.

*Reported in 365 P. (2d) 320.

The question of whether the Rule in Shelley's Case is still applicable to wills in this state is before us by reason of the following circumstances:

Frank J. Geissler died in 1936, leaving a will executed April 1, 1936, which contained the following provision:

"I give and bequeath unto my beloved wife, Teresa Geissler, of Odessa, Washington, all the rest, residue, and remainder of my estate, real, personal, and mixed, of whatsoever kind or nature and wherever situated, of which I may die seized or possessed, for and during the term of her widowhood, and should she remain a widow during the remainder of her life on her death to her heirs absolutely and in fee, and in the event of her remarriage during her lifetime, then and on the happening of that event to the St. Joseph's Catholic Parish of Odessa, Lincoln County, State of Washington, absolutely and in fee forever."

Teresa Geissler did not remarry, and died in 1960, leaving a will by which she devised the bulk of her estate to others than her heirs. The controversy is between the devisees, claiming under her will, and her heirs, claiming as remaindermen under the will of Frank Geissler.

This action by the heirs of Teresa Geissler is to quiet title to real estate owned by Frank Geissler at the time of his death. On an application for summary judgment, the trial court dismissed the action, and the pivotal findings of fact were:

Finding of fact No. 14:

"On April 1, 1936 [the date of Frank Geissler's will], and at all times since, the Rule in Shelley's Case, as a part of the common law, was and is in force in the State of Washington. Said Rule in Shelley's Case is stated as follows:

" 'If an estate for life is granted by an instrument and the remainder is limited by the same instrument, either mediately or immediately, to the heirs of the life tenant, the life tenant takes the remainder as well as the life estate.' "

Finding of fact No. 16:

"The language used in paragraph 10 of the will of Frank J. Geissler, which purports to convey an interest in the property owned by him to the plaintiffs herein after the death of Teresa Geissler, calls for the application of the

Rule in Shelley's Case, and said paragraph 10 does not convey, devise or bequeath any interest in the property to the plaintiffs or any of them."

The trial court's findings correctly state the Rule in Shelley's Case, as we have stated it in *Shufeldt v. Shufeldt* (1924), 130 Wash. 253, 227 Pac. 6. The question now before us for the first time is whether that rule is applicable to wills in this state as a part of the common law.

The text writers, with great unanimity, denounce the rule as of feudal origin and clearly violative of the testator's intention; and most states have abolished it as to wills.

Our determination of this matter is not to be influenced by earlier *obiter dicta* statements, or by what it has been assumed that we might do. We are concerned only with whether the legislature intended to and has abrogated the Rule in Shelley's Case in Washington as it applies to wills. For the first time we have undertaken an examination and analysis of the relevant statutes.

█ We first consider the purpose and effect of § 45 of "An Act Relating to Wills" (Laws of 1854, p. 318):

"If any person, by last will, devise any real estate to any person, for the term of such person's life, and after his or her death, his or her children, or heirs, or right heirs in fee, such devise shall vest an estate for life only in such devises, and remainder in fee simple in such children."

While the intention of the very first session of the territorial legislature to abrogate the Rule in Shelley's Case is unmistakable, and the intent that no devisee of a life estate was to receive more than a life estate is very clear, the efficacy of the statute was seriously affected by the failure to add, after the last word "children," the words "heirs or right heirs."

The territorial legislature, in January 1860, enacted a comprehensive probate code of three hundred and eighty-eight sections which specifically repealed the 1854 act, and by chapter II, "Wills, and rules applicable to and governing their construction," § 37, substituted the following:

"If any person, by last will, devise any real estate to any person for the term of such person's life, such devise vests

in the devisee an estate for life, and without the remainder is specially devised to the heirs of said devisee, it shall revert to the heirs at law of the testator." (Laws of 1860, p. 172)

This, likewise, evidenced the legislative intent to abrogate the Rule in Shelley's Case and to make certain that no devisee of a life estate received more than a life estate; but it inadvertently substituted a new and even more artificial rule, still violative of the testator's intention. If the word "without" was interpreted to mean *unless* (the usual interpretation), it limited the right of a testator to provide for any remainder over except to the heirs of said devisee, for if he named other remaindermen there was a reversion to his own heirs. This would have produced an unthinkable result for which there was no precedent and no reason. If "without" was interpreted as *if* (for which we have no authority), then it made valid the estate for life, but prevented any remainder over to the heirs of the life tenant—not by vesting a fee title in the life tenant, but by giving the heirs of the testator a reversionary interest.

This was re-enacted verbatim in the 1862 Probate Practice Act (being § 70 and part of the chapter relating to "Wills, and Rules applicable to and governing their construction" (Laws of 1862, chapter V, p. 210)). It remained unchanged until the adoption of a new probate code in 1917. Since that date the law has been that,

"If any person, by last will, devise any real estate to any person for the term of such person's life, such devise vests in the devisee an estate for life, and without the remainder is specially devised, it shall revert to the heirs at law of the testator." Laws of 1917, c. 156, § 40, p. 653; now RCW 11.12.180.

This is the statute with which we are presently concerned. Again, the legislative intent to abrogate the Rule in Shelley's Case and to limit the devisee of a life estate to that life estate remains constant. The devise of the remainder is clearly contemplated, and the situation is safeguarded where the testator fails to specify who is to take

real property after the termination of the life estate when the statute says:

" . . . and without the remainder is specially devised, it shall revert to the heirs at law of the testator."

Interpreting "without" as *unless*, this statute eliminates the confusion inherent in the 1860 and 1862 statutes relative to reversions and gives effect to the intent of the testator insofar as it is specifically expressed. We think there can be no doubt that a remainder is "specially devised" when it is devised to the heirs of a life tenant.

We have here a life estate to Teresa Geissler, with a devise of the remainder to the heirs of Teresa Geissler. The heirs of Frank Geissler have no claim to the real property and are making none, because there was a life estate to Teresa Geissler and the remainder was "specially devised." The devisees of Teresa Geissler have no claim to the real property in question here, because she had—by Frank Geissler's will—only a life estate, and under the statute that is all such a devise could give her; consequently, she had no interest in real estate to devise.

The trial court has misconstrued the effect of RCW 11.12.180 and its forerunners. The Rule in Shelley's Case, as it relates to wills, has been abrogated by the legislature; and were it deemed advisable to do so, it could do likewise as to deeds and trust agreements.

The summary judgment in favor of the devisees under the will of Teresa Geissler should be reversed, and a summary judgment entered quieting title in the heirs of Teresa Geissler.

FINLEY, C. J., MALLERY, ROSELLINI, OTT, and FOSTER, JJ., concur.

WEAVER, J. (dissenting)—

"In dealing with the Rule in Shelley's case it is very easy to become antiquarian. The deeper you go into it, the more tantalizing its puzzles become; indeed, one can foresee, and perhaps envy, the scholar who some day will escape from a troubled world and devote his life to writing the definitive work on the Rule. Done with insight and imagination it

could be as great as Gibbon's 'Decline and Fall of the Roman Empire.' " Casner and Leach: Cases and Text on Property (1st ed. 1951) 363.

The challenge is interesting, but the basis of this dissent will be limited to three propositions:

*First*: The legislature has established the Rule in Shelley's Case as a rule of decision in this jurisdiction and this court has recognized it as such.

*Second*: RCW 11.12.180 (Laws of 1917, chapter 156, § 40) does not abrogate the Rule in Shelley's Case.

*Third*: The majority opinion makes questionable an indeterminate number of titles to real property in this state.

### I. *Rule of Decision*

The Rule in Shelley's Case is one of a family of common-law rules of property. Also included are the rules against perpetuities and restraint on alienation developed by the common law to encourage the early vesting of estates and the power of alienation. They are positive rules of law, not rules of construction.

RCW 4.04.010 provides:

"The common law, so far as it is not inconsistent with the Constitution and laws of the United States, or of the state of Washington nor incompatible with the institutions and condition of society in this state, *shall be the rule of decision in all the courts of this state.*" (Italics mine.) Laws of 1862, chapter 1, § 1; Laws of 1877, chapter 1, § 1; Code of 1881, chapter 1, § 1; Laws of 1891, chapter 17, § 1; see *Cooper v. Runnels*, 48 Wn. (2d) 108, 112, 291 P. (2d) 657, 57 A. L. R. (2d) 597 (1955).

This court has recognized the rule against perpetuities[1] and the rule against restraint on alienation[2] as "rules of decision" in the courts of this jurisdiction. The rules are

---

[1]*In re Lemon's Estate*, 47 Wn. (2d) 23, 286 P. (2d) 691 (1955), and cases cited; see RCW 11.98.010-900 (Laws of 1959, chapter 146, § 1) for statutory modification.

[2]*Richardson v. Danson*, 44 Wn. (2d) 760, 270 P. (2d) 802 (1954); *Seattle First Nat. Bank v. Crosby*, 42 Wn. (2d) 234, 254 P. (2d) 732 (1953); *Fowler v. Wyman*, 169 Wash. 307, 310, 13 P. (2d) 501 (1932).

applied with equal vigor to the provisions of deeds, wills, and trusts.

It is the thesis of part I of this dissent that prior decisions of this court have recognized the Rule in Shelley's Case as a rule of decision in Washington.[3]

The Rule, which was promulgated as early as the fourteenth century, has been stated in many different ways,[4] but one of the more concise definitions, attributed to Chancellor Kent, is:

" 'When a person takes an estate of freehold, legally or equitably, under a deed, will, or other writing, and in the same instrument there is a limitation by way of remainder, either with or without the interposition of another estate, of an interest of the same legal or equitable quality, to his heirs or heirs of his body, as a class of persons to take in succession from generation to generation, the limitation to the heirs entitles the ancestor to the whole estate.' " 47 Am. Jur. 791, Rule in Shelley's Case, § 2.

This court first recognized the Rule in Shelley's Case in *Shufeldt v. Shufeldt*, 130 Wash. 253, 268, 227 Pac. 6 (1924).

"It is thought that the rule in Shelley's case, which as a principle of common law is in force in this state, sustains the contention that the remainder under discussion could not be a vested remainder. That arises from a misunderstanding of the rule in Shelley's case.

"Under the rule in Shelley's case, if an estate for life is granted by an instrument and the remainder is limited by the same instrument, either mediately or immediately, *to the heirs of the life tenant,* the life tenant takes the remainder as well as the life estate.

"The requisites of the rule are these: 'first, a freehold estate; second, a limitation of the remainder to the heir or heirs of the body *of the person taking the freehold estate,* by the name of the heirs as a class, and without explanation, as meaning sons, children, etc.; third, the estates of freehold and in remainder must be created by the same instrument; fourth, the estates must be of the same quality— that is, both legal or both equitable.' *Bails v. Davis,* 241 Ill. 536, 89 N. E. 706, 29 L. R. A. (N. S.) 937."

[3]See Cross, "The Rule in Shelley's Case in Washington," 15 Wash. L. Rev. 99 (1940).

[4]See 3 Restatement, Property, § 312, and comment subsection (1), p. 1742.

The efficacity of the Rule was presented squarely to the court in *Fowler v. Wyman,* 169 Wash. 307, 309, 13 P. (2d) 501 (1932). Property had been deeded to the grantee " 'during her life time, and at her death to be the property of the heirs of her body.' "

Not only did the court hold the Rule compatible "with the institutions and condition of society in this state," but also held the grantee to have a fee-simple estate, saying:

"Counsel for appellants say that our recognition in *Shufeldt v. Shufeldt,* 130 Wash. 253, 227 Pac. 6, of the rule in question was 'pure obiter dictum.' No need of any controversary about that. They admit that the question of the validity of the rule is in this case, and we take occasion to say now that the rule is a rule of decision in this state because of the common law and the provisions of Rem. Comp. Stat., § 143."

In *In re Johnson's Estate,* 192 Wash. 439, 73 P. (2d) 755 (1937), the court held that the Rule in Shelley's Case was not applicable to the testamentary trust under consideration. The life tenant had an equitable interest, the heirs a legal interest; thus, the facts did not fit the format of of the Rule.

Finally, the court recognized and applied the Rule in Shelley's Case to a trust agreement in *Fowler v. Lanpher,* 193 Wash. 308, 75 P. (2d) 132 (1938).

My point is: The legislature, by virtue of RCW 4.04.010 (quoted *supra*) and its predecessors, has made the common law "the rule of decision in all the courts of this state." This court has heretofore determined that the Rule in Shelley's Case, a part of the common law, is

" . . . not inconsistent with the Constitution and laws of the United States, or of the state of Washington nor incompatible with the institutions and condition of society in this state. . . . ";

hence, the Rule in Shelley's Case should be applied to the facts of the instant case unless it is clearly demonstrated that the Rule has been abrogated by the legislature.

II. *RCW 11.12.180*—(Laws of 1917, chapter 156, § 40)

When Frank Geissler died in 1936 and his will became

operative, the only statute applicable to the question now before the court was Rem. Rev. Stat., § 1410 (now RCW 11.12.180). It provided:

"If any person, by last will, devise any real estate to any person for the term of such person's life, such devise vests in the devisee an estate for life, and without the remainder is specially devised, it shall revert to the heirs at law of the testator."

It is of interest to note that this statute, passed in 1917 (Laws of 1917, chapter 156, § 40), was in force and effect when this court discussed the Rule in Shelley's Case on the four occasions mentioned.

I do not agree that the statute manifests a legislative intent to abrogate the Rule in Shelley's Case. It simply states a rule of logic—and of property: If the owner of an estate in real property devises a lesser estate than he owns, the interest therein that is not devised is a reversion and *vests in his heirs* unless "the remainder is specially devised." The basic purpose of the statute is to define a situation in which an interest in land reverts to the heirs of a testator. It does not purport to abolish anything.

Although not controlling, because the subject matter was personal property, *Abbott v. Everett Trust & Sav. Bank*, 50 Wn. (2d) 398, 312 P. (2d) 203 (1957), is illustrative of the scope of the statute. Decedent, by his will, did not purport to dispose of the remainder of the trust estate; it was not "specially devised." We held that the residue of the trust fund (if any) would revert to the heirs of the testator after the death of the life tenant.

On the other hand, the testator may specially devise the remainder to a third person, or he may specially devise the remainder to the "heirs" of the life tenant. In neither event would the statute be operative, for either the third party would take as a remainderman[5], or the

---

[5]See *McKenna v. Seattle-First Nat. Bank*, 35 Wn. (2d) 662, 214 P. (2d) 664, 16 A. L. R. (2d) 679 (1950), for a discussion of an attempted remainder to heirs of grantor. Noted: 26 Wash. L. Rev. 139 (1951).

life tenant would be entitled to the whole estate under the Rule in Shelley's Case.

The majority opinion quotes and discusses Laws of 1854, § 45, p. 318; Laws of 1860, chapter II, § 37, p. 172; and Laws of 1862, chapter V, p. 210, and fairly points out their deficiencies. (There has been no previous judicial interpretation of them.) I do not agree that these statutes manifest an unmistakable legislative intent to abrogate the Rule in Shelley's Case, nor that they are applicable to this case, for they were not the statutes in force at the time of the decedent's death.

III. *The Majority Opinion Unsettles Title to Real Property.*

I hold no brief for the Rule in Shelley's Case. If, however, it is to be abolished in this jurisdiction as a rule of decision, it should be abolished by the legislature, not by judicial opinion. Long prior to statehood, the supreme court of Hawaii held that, although it was authorized to adopt the reasoning and principles of the common law

" . . . 'so far as the same may be founded in justice and not in conflict with the laws and customs of this kingdom' . . . ,"

it was not bound to do so. The court declined to adopt the Rule in Shelley's Case as the law of the kingdom. *Thurston v. Allen*, 8 Hawaii 392 (1891).

The supreme court of Vermont refused to apply the rule. *Smith v. Hastings*, 29 Vt. 240 (1857); *Gilkey v. Shepard*, 51 Vt. 546 (1879).

I cannot find that any jurisdiction has abrogated the Rule in Shelley's Case by judicial decision once the rule has been espoused as a part of the common law.

The Rule in Shelley's Case was abrogated in England by the Law of Property Act, 1925, 15 & 16 Geo. 5, chapter 20, § 131, at p. 661. At least thirty-six states have adopted statutes that wholly or partially abrogate the rule.[6]

---

[6] The statutes are collected in Restatement of the Law, 1948 Supp., § 313, p. 490.

If it is to be abrogated in this state, it should be done by statute operating in *futuro*. To abrogate it by judicial decision, even as to wills, will unsettle an indeterminate number of titles to real property whose validity has been previously established by reliance upon the rule as one of decision in this jurisdiction.

The facts of the instant case furnish an excellent example of the confusion in titles that will result. The inheritance tax report filed by Mr. Geissler's executor with the Washington State Tax Commission treated all of the property of decedent as vesting in Teresa Geissler in fee simple. Paragraph 10 of the decree of distribution states that

" . . . said property has now been distributed in accordance with the will of the deceased."

Certain lots in the town of Odessa were distributed to Teresa Geissler in the same manner as other real property of the estate. June 13, 1945, Teresa Geissler executed a warranty deed conveying fee-simple title to the Odessa property. Thereafter, a quit claim deed was executed to the same grantee by the Catholic Bishop of Spokane, releasing the interest he would have had in the Odessa property in the event of Teresa Geissler's remarriage.

*Quare*: Who owns the Odessa property now?

Under the majority opinion, it would appear that the conveyance of the Odessa property by Teresa Geissler is a nullity. I am sure this illustration can be multiplied many times.

I would affirm the judgment of the trial court; hence, this dissent.

Donworth and Hunter, JJ., concur with Weaver, J.

---

January 8, 1962. Petition for rehearing denied.