[No. 12931.   Department One.   December 11, 1915.]

## MARTHA E. HAYWARD, *Appellant*, v. TACOMA SAVINGS BANK AND TRUST COMPANY *et al.*, *Respondents*.[1]

TRUSTS—ACTIVE TRUST—CONSTRUCTION—TITLE OF TRUSTEE.   An active trust is created, passing legal title to the trustee, where, by a trust deed of all his property and by a contemporaneous will, a testator placed the same in the hands of a trustee charged with the duty of paying taxes and selling sufficient lands to produce an income of $200 per month to be paid to his widow during life, and after her death, to distribute the balance of the estate to his children.

SAME—ACTIVE TRUST—DISCHARGE.   The trustee of an active trust, holding the legal title, is entitled to hold and administer the trust property until the completion of the trust, notwithstanding all the residuary beneficiaries joined in a conveyance to the *cestui que trust* for life, who sought a discharge of the trust.

TRUSTS—TRUST DEED—VALIDITY—UNDUE INFLUENCE.   A wife's consent to joining in a trust deed, upon importunities of her husband upon his deathbed, is not induced by undue influence, although she was constrained to do so while laboring under great mental distress and fearing that her refusal would hasten his death.

Appeal from a judgment of the superior court for Pierce county, Card, J., entered December 18, 1914, upon sustaining a demurrer to the complaint, dismissing an action to terminate a trust, tried to the court.   Affirmed.

*M. S. Lindsay* and *Gordon & Easterday*, for appellant.

*B. S. Grosscup* and *W. C. Morrow*, for respondents.

MOUNT, J.—This action was brought to terminate a trust.   The trial court sustained a demurrer to the amended complaint and the action was dismissed.   The plaintiff has appealed.

It appears from the allegations of the amended complaint that, on the 6th day of September, 1913, the appellant and Anthony J. Hayward, now deceased, were husband and wife;

[1]Reported in 153 Pac. 352.

and that on that day they conveyed to the respondent, Tacoma Savings Bank & Trust Company, by trust deed, a large number of tracts of land situated in several counties in this state.   Nearly all of these different tracts of land were community property.   The home property, also included in the trust deed, and located in the city of Tacoma, was the separate property of the appellant.

By the terms of the trust deed, the trustee was required to pay all taxes and assessments on the property, and to sell sufficient thereof to reimburse itself for moneys advanced, and to create a fund sufficient to produce the sum of $200 per month, which was required to be paid to the appellant after the death of Mr. Hayward.   The trust deed required that deeds made during the lifetime of the grantors should be jointly made by the grantors and the trustee; and after the death of Anthony J. Hayward, sales were to be made by joint agreement of the appellant, the executors of the will of Anthony J. Hayward, and the trustee.   The trust deed further provided that the trustee was to receive as compensation in addition to interest upon sums advanced, a sum equal to the fees allowed by law for the administration of estates of deceased persons; and that these should be a first charge upon the estate.

At the time of making this trust deed, and as a part of the same transaction, Mr. Hayward executed a will in which he recited:

"I have contemporaneously with the execution of this will executed a trust deed of all of my real estate to Tacoma Savings Bank & Trust Company in trust for the use and benefit of my wife, Martha E. Hayward, my daughters, Emma M. Eastman and Hallie B. Hayward, and my son, Myron B. Hayward.   I direct that said trust agreement shall be carried out according to its spirit and letter.

"I hereby constitute my wife the executrix of this will, and after her death it is my desire that the administration of the estate shall be completed according to the terms of said trust deed hereinbefore referred to by my children, Emma M.

Eastman, Hallie B. Hayward, and Myron B. Hayward, as co-executors, and in case of the death of any of them, by the survivors. Any real estate not covered by said trust deed is hereby willed in trust to the Tacoma Savings Bank & Trust Company, to be held and distributed in the same manner and form and subject to the same conditions as the real estate described in said trust deed. . . ."

The trust deed provided that the trustee should have power to sell and convey any of the property therein mentioned, at either public or private sale, and on such terms as the trustee thought would be most advantageous to the estate. After making provisions for expenses and advancements by the trustee, the trust deed provided that the property should be converted into interest bearing securities, consisting of real estate first mortgages and first-class bonds and warrants, until a fund should be created, sufficient in the judgment of the trustee to enable the trustee to pay from its proceeds, without impairment of the principal, the taxes on the home of Mrs. Hayward and the $200 monthly payment to be made to her during her lifetime. After such fund shall have been provided, the trustee is, by the trust deed, directed to distribute the balance of the estate among the children of the grantors.

The complaint then alleges that all of the beneficiaries named in the said deed of trust are of legal age and residents of Pierce county, state of Washington; that on the 30th day of April, 1914, all of the remaindermen and beneficiaries under said deed joined in a conveyance to the appellant of all of their rights in and to the lands described in the trust deed, and renounced all their title and interest by virtue of the will of Anthony J. Hayward.

The complaint further alleges that the appellant signed the trust deed when laboring under great mental distress, and was not fully competent to understand the terms, conditions, and effect of the deed; that the appellant had no opportunity of consulting with her legal adviser, and under-

stood that her separate property would not be subject to the payment of advances made by the respondent trust company; that the appellant demanded a reconveyance of all the property, and offered to reimburse the respondents for all proper charges and expenses incident thereto. These are briefly the allegations of the complaint.

It is argued by the appellant that "A trust will be discharged if all of the beneficiaries are *sui juris* and desire it, or when the entire beneficial interest passes to one person." A number of authorities are cited to this effect. We think this is the rule where a trust is an inactive or dry trust; but where the trust is a special or active trust, we think this rule does not apply. It is plain in this case that the trust created is an active trust. The trustee, under the terms of the trust deed and under the will, which was executed at the same time and as a part of the same transaction, was required to pay all assessments and taxes of every kind against the properties, which were located in different counties in the state. Upon the death of Mr. Hayward, the trustee was required to advance to the appellant the sum of $200 on the first of each month. It is apparent, from a reading of the trust deed and the will, that it was the desire of Mr. Hayward, in making the trust deed and the will, to provide a comfortable allowance for his wife during her lifetime, and that then the property expressly reserved to her use should descend to her children; and, intending to relieve his widow from the burdens of caring for and looking after the property, it was placed in the hands of a trustee to actively care for and convey the same for the purposes mentioned in the trust deed. This is plainly an active trust; and it is clear, we think, that the fee of this property rests in the trustee.

The rule that in all cases of active trusts the title to trust property is in the trustee is supported by the authorities from the earliest times. The case of *Smith v. Proctor*, 139 N. C. 314, 51 S. E. 889, 2 L. R. A. (N. S.) 172, is sufficient

18—88 WASH.

to show that this is the established rule upon this point. It was there said:

"In Am. & Eng. Enc. Law (2 ed.), vol 28, p. 923, it is said: 'If there is an axiom of the law it must be regarded as axiomatic in the construction of active trusts that the trustee will take precisely that quantum of legal estate which is necessary to the discharge of the declared powers and duties of the trust. Thus the trustee will take, by implication of law, a fee in the estate when the duties of the trust require it, although the conveyance is in terms a life estate or fails to use the word 'heirs.'' In the same volume, at page 924, it is also said: 'The estate of trustee will, nevertheless, not extend beyond the term required by the exigencies of the trust, the unnecessary portions of the estate becoming executed by the statute of uses.' The authorities clearly show this to be a correct statement of the doctrine."

In *Martin v. Moore*, 49 Wash. 288, 94 Pac. 1087, in a case where the testator in his will directed his executor to dispose of his interest in certain lots in Pullman and divide the proceeds equally between his children, and a sale having been made by the executor in accordance with the provisions of the will and a suit brought to quiet the title, we said, at page 291:

"That it was the intention that the executor should convey the interest of the deceased in the Pullman lots and divide the proceeds between the two children, is entirely clear. Such being true, the title to the land did not vest in the son and daughter upon the death of the father. The brother of the deceased, who was named as executor without the intervention of any court, became a trustee for all purposes necessary to execute the terms of the will. . . . The terms of the trust could not be carried out without the power to sell the land and to transfer the title thereto. The title therefore vested in the trustee for that purpose. It is the established doctrine that 'trustees take exactly that quantity of interest which the purposes of the trust require.' "

See, also, Perry, Trusts, §§ 310-318.

We think it is clear from these authorities that the trustee in this case, under the allegations of the complaint, took

title in fee, and that the trust was an active trust. The fact that the heirs conveyed all their interest in the property to their mother after the death of their father, took away none of the rights of the trustee to hold the land and administer the trust as it had agreed to do. The effect of these deeds from the children to their mother simply waived their interest, whatever it was, and authorized the mother, after the trust had been fully performed, to dispose of the property as she chose, and nothing more. The effect of the contention of the appellant in this case is to set aside, not only the trust deed, but also the will of Anthony J. Hayward, which was made by him relying upon the terms of the trust deed being carried out. In other words, the appellant now in this action is seeking to set aside the will which was made for her benefit, and which the testator evidently thought was for her best interest.

It is further argued that, under the allegations of the complaint, sufficient undue influence is shown to set aside the trust deed. The averment in the complaint is

"That, at the time the plaintiff signed the trust deed herein set out, she was laboring under great mental distress and was not fully competent to understand the terms, conditions, and effect of such instrument. That this plaintiff was deeply attached to her husband, who was critically ill at the time of executing the said deed, and who persistently importuned this plaintiff to sign the same, and that this plaintiff feared that her refusal so to do would hasten his death; that in signing said deed she was constrained to do what her free will would refuse, and her signature was given only that her husband's mind might be at rest and his life prolonged."

It is not claimed that there was any fraud in connection with the execution of the trust deed. But it is alleged, in substance, that the plaintiff was unduly influenced because she feared her refusal to sign the deed would hasten her husband's death, and that her signature was given only that his mind might be at rest and his life prolonged. There was clearly no undue influence exercised by the husband upon

the wife.   He died about two months after the trust deed
was executed.   He probably knew that death was fast ap-
proaching.   She may have known it.   He therefore impor-
tuned her, as she says, to sign the deed.   She did it, not be-
cause she was unduly influenced by her husband, but because
she desired to relieve his mind and to prolong his life.   The
fact that he persuaded her to sign the deed against her will
is not undue influence, under those circumstances.   As stated
by the respondents' counsel: "The allegations of undue in-
fluence are allegations of mental pliability which, if true,
we may infer the deceased took into account in seeking to
protect her against influences which he feared would become
dominant after he had passed and gone, and against which
he sought to provide."

We are clearly of the opinion, therefore, that the com-
plaint does not state a cause of action for vacating the trust
deed, or setting aside the will, upon either ground, and the
judgment is therefore affirmed.

MORRIS, C. J., CHADWICK, and ELLIS, JJ., concur.