Estate of Benjamin H. Fotheringham, Deceased, Lillian Fotheringham, Executrix, et al. [1] v. Commissioner. Estate of Fotheringham v. Commissioner
Docket Nos. 33894, 34461, 34462, 34564, 47924.
United States Tax Court
T.C. Memo 1956-211; 1956 Tax Ct. Memo LEXIS 83; 15 T.C.M. (CCH) 1091; T.C.M. (RIA) 56211; September 18, 1956
George W. Young, Esq., for the petitioners. John O. Durkan, Esq., for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: The respondent determined deficiencies in the income tax of the petitioners as follows for the indicated years: Petitioner
Dkt. No.
Year
Deficiency
Estate of Benjamin H. Fotheringham
33894
1946
$608.95
1947
838.92
Estate of Dalton D. Fotheringham
34461
1946
968.90
1947
909.72
Jessie Victoria Fotheringham
34462
1948
120.00
Jessie V. Fotheringham
47924
1949
151.00
Lillian Fotheringham
34564
1949
309.00
*84 Issues presented for determination are the correctness of the respondent's action (1) in determining Benjamin H. Fotheringham's share of the distributable income of the Mary Fotheringham Trust for 1947; (2) in determining Jessie Victoria Fotheringham's share of the distributable income of the Mary Fotheringham Trust for 1948 and 1949; (3) in determining Lillian Fotheringham's share of the distributable income of the Mary Fotheringham Trust for 1949; (4) in failing to determine that the estate of Dalton D. Fotheringham had no share in the distributable income of the Mary Fotheringham Trust for 1946 and 1947; (5) in failing to determine that the assessment of any deficiency in income tax of the estate of Dalton D. Fotheringham for 1946 is barred by the expiration of the period of limitations; and (6) in failing to determine that the assessment of any deficiency in income tax of the estate of Benjamin H. Fotheringham for 1946 is barred by the expiration of the period of limitations. Findings of Fact The income tax returns of the petitioners for the years in controversy were filed with the collector for the district of Washington. Mary Fotheringham died testate and a resident *85 of Spokane, Washington, on February 1, 1932. She was survived by three sons, Benjamin H., Bernard J., and Dalton D. Fotheringham, each of whom was more than 21 years of age. Prior to and at the time of her death she owned and operated the Crest Hotel which is situated in Spokane. Among other real properties owned by her was one known as the Egyptian Theatre. The estate of Mary Fotheringham was probated in the Superior Court of the State of Washington in and for the County of Spokane. Benjamin H. Fotheringham, named as executor in her will, was appointed and served as such until administration of the estate was completed. After providing for certain specific bequests to her three sons, Mary Fotheringham's will provided as follows with respect to the residuary portion of her estate: "FIFTH: I give, devise and bequeath unto my son, Benjamin H. Fotheringham, all of the rest, residue and remainder of my estate, in trust nevertheless for the uses and purposes hereinafter stated. In the performance of said trust I direct that said trustee be not required to give bonds [bond], and unless required to do so by reason of irregularities, that he be not required to report to any court. *86 I direct that upon the completion of the probate proceedings after my death, said trustee be and he is hereby authorized and directed to take into his possession all of the remaining personal property and real estate and to exercise supervision thereof, collecting all rents or moneys due the estate from every source and apply them toward the performance of his trust, as hereafter stated. "After my death it is my sincere hope and desire that my three sons shall continue to support Altha MacDonald, Emma Jennings and my grandson, William H. [William B.] Fotheringham to the best of their ability, with the property available. In making this suggestion, I am mentioning no definite amount, but shall rely upon my said sons making such contribution as will relieve said Altha MacDonald from being in want. I direct that my son Benjamin H. Fotheringham as trustee, shall have the right at any time to dispose of the Crest Hotel property at any time that he shall procure the consent of my other two sons to such sale, but it is my desire that said trustee shall not sell or make any distribution of the Egyptian Theatre property for a period of twenty years after my death. It is my express desire *87 that my executor during his term as such and during the time he shall act as trustee, shall make no distribution of the income to [of] the property in his hands until after the indebtedness of my said properties shall have been fully cancelled, and thereafter the income from said property in excess of the special bequests hereinabove provided for shall be divided equally between my three sons, namely Bernard J. Fotheringham, Dalton D. Fotheringham and Benjamin H. Fotheringham. It is my desire and intention that the trust hereby created shall continue for a period of (20) twenty years after my death and at the expiration of said period, I direct that all property then in the hands of said trustee be divided into three equal portions, one portion thereof to be given to my son Bernard J. Fotheringham, one portion to Benjamin H. Fotheringham and one portion to Dalton D. Fotheringham. "SIXTH: In the event of the death of or the inability to act as trustee of my son, Benjamin H. Fotheringham, I hereby make, constitute and appoint the Spokane Eastern Trust Company of Spokane, Washington, to be trustee in his place, to act without bond." On May 9, 1939, Benjamin H. Fotheringham filed *88 in the Superior Court of the State of Washington in and for the County of Spokane his final account as executor of his mother's estate and asked the court to confirm the account and make distribution of the estate to him as trustee as provided in her will. The account showed that the only properties remaining in the hands of the executor were the Crest Hotel property, the Egyptian Theatre property, three other parcels of real estate, and the furnishings and fixtures in the Crest Hotel. The account further showed as remaining unpaid an indebtedness, totaling $33,138.77, secured by first and second mortgages on the Crest Hotel property; an indebtedness of $8,279.78 secured by a first mortgage on the Egyptian Theatre property; an indebtedness on notes payable totaling $6,841.49; $6,026.88 on accounts payable; and $4,715.32 payable under contracts; or a total indebtedness of $59,002.24. On October 30, 1939, the court confirmed the final account, discharged Benjamin as executor, and distributed to him as trustee all of the real estate and personal property of the estate to be applied toward the uses and purposes designated by the trust provisions of the will. At the time Mary Fotheringham *89 executed her will in October 1931 the Egyptian Theatre property was leased to a bank for a term of 50 years at $400 per month. In June 1933 the bank failed and its liquidator repudiated the lease. Thereafter the property remained vacant and unprofitable for a considerable period and fell into a bad state of repair. The estate was without present or prospective funds to put the property in proper rentable condition. A subsequent tenant became delinquent in the payment of his rental, which was little more than sufficient to pay the taxes on the property and to pay the intermittent expenses connected with it. During September 1939 Daniel H. Dwight offered to purchase the Egyptian Theatre property for $36,000 provided a good and proper conveyance of it could be made to him. Bernard J. Fotheringham also concluded that if the sale could be effected at that price, he would prefer to accept $11,000 of the proceeds of the sale in lieu of all his interest in the estate, rather than have the entire proceeds of sale applied on indebtedness of the estate, in the belief that the $11,000 was worth more to him at that time than a much greater sum would be worth to him at the termination of the trust *90 provisions of the will of his mother. In the foregoing situation Benjamin, as executor of the estate of Mary Fotheringham and trustee under her will, brought an action on September 23, 1939, in the Superior Court of the State of Washington in and for the County of Spokane seeking a decree (1) determining the rights of William B. Fotheringham, Altha MacDonald, and Emma Jennings under the will; (2) determining that the provision of the will prohibiting the sale of the Egyptian Theatre property for a period of 20 years was obnoxious to the interests of the estate; (3) authorizing Benjamin H., Bernard J., and Dalton D. Fotheringham, in contravention of the provision of the will against sale for a period of 20 years, to sell the Egyptian Theatre property to Daniel H. Dwight for $36,000; and (4) authorizing Benjamin and Dalton to acquire the interest of Bernard in the estate by the payment to him by Benjamin, as trustee and executor of the estate, of $11,000 out of the proceeds of such sale in full of his (Bernard's) interest in the estate, in derogation of the provision of the will requiring Benjamin to apply the full proceeds of sale to the liquidation of the estate's indebtedness. *91 On September 24, 1939, Benjamin, Dalton, and Bernard entered into a written agreement wherein Bernard agreed that, in the event of the sale to Daniel H. Dwight of the Egyptian Theatre property for $36,000, he would accept a payment of $11,000 to be made out of the proceeds of such sale "in lieu of his interest in said [his mother's] estate" and "in full satisfaction, liquidation and discharge of any right, title, claim or interest that he might have or could ever assert either in law or in equity, whereby he might in the future claim any greater or other sum to be due him from the estate of Mary Fotheringham" and that he "does by this instrument, and upon payment to him of $11,000.00, sell, assign, transfer, convey and set over unto party of the first part [Benjamin] and party of the second part [Dalton], in equal portions, all of his interest in and to the remainder of the estate" of his mother. The agreement recited that Bernard, "among other things, has agreed to accept the sum of $11,000.00 paid to him as hereinabove specified, in the belief that this sum is worth more to him at this time than a much greater sum would be worth to him at the termination of the trust provision *92 of the estate of" his mother. The agreement of September 24, 1939, was filed in the probate file of the estate of Mary Fotheringham. On October 26, 1939, Dalton and Benjamin entered into an agreement which referred to the above-mentioned action brought on September 23, 1939, by Benjamin and recited that a purpose of such action was to obtain a decree empowering him to sell the Egyptian Theatre property for $36,000 "and to expend from said sum $11,000.00 to be paid to the said Bernard J. Fotheringham in consideration of his release to parties of the first [Dalton] and second [Benjamin] part all of his right, title and interest in and to every part or portion of the estate of the said Mary Fotheringham, deceased, and to use the remainder thereof, except the sum of $600.00, by applying the same upon mortgage indebtedness and taxes * * *." The agreement further provided as follows: "Whereas, during the course of administration of this estate, party of the second part [Benjamin] in his capacity as Executor and Trustee, has paid to party of the first part [Dalton] from out of the earnings of said estate in periodic payments, a sum of money which totals approximately $9,000.00, *93 and "Whereas, party of the second part has managed said hotel property and has credited to himself for services rendered the sum of $160.00 per month, and has utilized apartment space in said hotel over said term for the benefit of himself and his wife, and "Whereas, it is the desire of both parties to effect a mutual understanding and agreement as to the operation of the said Crest Hotel, if and when they become the sole owners thereof by reason of the purchase of the interest of the said Bernard J. Fotheringham, as aforesaid, "Now, therefore, this agreement: "First. It is agreed by and between the parties hereto that each shall have an equal interest in and to said hotel property and/or the remaining assets of the estate of Mary Fotheringham, deceased, except party of the second part shall have credited to his account in addition to notes which he has in the principal sum of $6,750.00 without interest, the further sum of $3,500.00, and if and when $600.00 has been paid to party of the first part from out of the proceeds of the sale of said Egyptian Theater property, then and in that event party of the first part shall have charged against his interest in this estate the further *94 sum of $600.00. "Second. Party of the second part shall be continued in the management of said hotel property and/or any other assets of the said Mary Fotheringham's estate, for which he shall be paid the sum of $160.00 per month, which said sum shall include the services of both himself and his wife, and he shall have for his use and enjoyment an apartment in said Crest Hotel as he presently has. "Third. Books of account shall be kept by party of the second part, which said books shall disclose in detail all monies received by way of operation of said hotel and/or other assets of said estate. A bank account shall be opened by party of the second part in his capacity as trustee, and all monies collected shall be deposited in said account, and all disbursements shall be made by check with the exception of petty cash items not in excess of $5.00. "Fourth. Said property is not to be sold, mortgaged or encumbered in any manner, except with the written consent and approval of both parties hereto. "Fifth. Party of the first part shall receive from out of the earnings of said hotel weekly payments to aggregate not over $100.00 per month, which said sums shall be charged or credited *95 as the interest of the parties may appear. "Sixth. Party of the first part agrees not to interfere in the management and operation of said hotel except as may be necessary in checking books of account and records of said hotel." * * *
The agreement of October 26, 1939, was filed in the probate file of the estate of Mary Fotheringham. In the above-mentioned action brought by Benjamin on September 23, 1939, the court, on November 6, 1939, found as a fact and concluded as a matter of law that the estate of Mary Fotheringham had been closed and had been distributed to Benjamin as trustee under her will. The court also decreed (1) that the provision in the will relating to the support of Altha MacDonald, Emma Jennings and William B. Fotheringham was precatory in nature and was not intended by the testator to obligate Benjamin either personally, or as executor, or as trustee of the estate, or Bernard or Dalton to contribute in any sum whatever to the support of those persons; and (2) that the provision of the will prohibiting the sale of the Egyptian Theatre property for a period of 20 years after the death of the testator was obnoxious to the efficient and orderly handling of *96 the estate. Because of the changed financial affairs of the estate, the court authorized Benjamin, Dalton, and Bernard to sell the Egyptian Theatre property in contravention of the provision of the will. Further, the court authorized Benjamin and Dalton to purchase for themselves the interest of Bernard in the real and personal property of the estate for $11,000 and authorized Benjamin, as trustee under the will, "to divert the sum of $11,000.00 received by him from the sale of said property to the payment of the interest of said Bernard J. Fotheringham, and that the remaining portion of said purchase price be applied toward the payment of the obligations of said estate." Thereafter the Egyptian Theatre property was sold for $36,000. In accordance with the terms of the agreement of September 24, 1939, between Benjamin, Dalton, and Bernard and pursuant to the court's decree of November 6, 1939, Benjamin, as trustee, from the proceeds of the sale paid to Bernard the sum of $11,000 as the latter's interest in the trust estate. Following the death of his mother and during the period he was executor of her estate, Benjamin operated the Crest Hotel and endeavored to convert it into an *97 apartment hotel. Following the distribution of the residuary portion of his mother's estate to him as trustee under her will, he, as trustee, operated the hotel until his death in 1948. Dalton D. Fotheringham died testate on February 27, 1945, leaving all of his estate, without description, to petitioner Jessie Victoria (Jessie V.) Fotheringham, his wife. Donald Bernard Fotheringham, son of Dalton, was appointed executor of the latter's will which contained no provision for the distribution of income during the administration of his estate. Among the items listed as assets in a general inventory and appraisement of the estate were a one-half interest in the Crest Hotel (land and improvements) and a one-half interest in the furnishings in the Crest Hotel. On April 29, 1946, Benjamin H. Fotheringham, Lillian Fotheringham, his wife, and Jessis V. Fotheringham, as plaintiffs, brought an action in the Superior Court of the State of Washington in and for the County of Spokane against B. H. Kizer, as sole surviving member of the Board of Trustees of Riverside Construction Company, a corporation, as defendant. The action was brought to remove an alleged cloud on the title to the Crest *98 Hotel property arising from a note given by Mary Fotheringham in September 1931, secured by a mortgage on the property. In their complaint, the plaintiffs alleged that they were owners in fee simple of the Crest Hotel. The defendant entered no appearance in the proceeding and, as a result of his default, the court decreed the relief sought by plaintiffs. Benjamin H. Fotheringham died testate on September 19, 1948, leaving all of his estate, without description, to petitioner Lillian Fotheringham, his wife, who was appointed executrix of his will. The will made no provision for distribution of income during administration of his estate. Among the items listed as assets in a general inventory and appraisement of the estate were an undivided one-half interest in the Crest Hotel (land and improvements) and an undivided one-half interest in the furnishings in the Crest Hotel. On or about March 11, 1949, Lillian Fotheringham filed in the Superior Court of the State of Washington in and for the County of Spokane a document designated as, and purporting to be, "Final Report of Trusteeship" of the estate of Mary Fotheringham. In that report she represented that at the time of his death *99 Benjamin H. Fotheringham was trustee of the Crest Hotel, comprising land, building, furnishings, cash, and accounts, under the will of Mary Fotheringham whose estate was distributed to him by decree entered October 30, 1939; and that, since Benjamin's death, she had been conducting the business of the Crest Hotel under the direction of the successor trustee, Seattle-First National Bank, successor to Spokane and Eastern Trust Company. She also represented that by reason of Benjamin and Dalton having, by their wills, left all of their estates to her and Jessie, respectively, she and Jessie had become the sole beneficiaries of the trust created by the will of Mary Fotheringham. Further, after referring to a statement forming part of the report and after requesting that the statement be approved and the respective interests of herself and Jessie be ascertained and established, Lillian asked that the court decree that she have a lien in the sum of $6,919.13 upon the interest of Jessie in the trust estate. On April 4, 1949, Jessie filed objections to the above-mentioned "Final Report of Trusteeship." She made no objection to Lillian's representation that Benjamin H. Fotheringham at the *100 time of his death was trustee of the Crest Hotel property under the will of his mother and that, subsequent to his death, Lillian had been conducting the business of the Crest Hotel under the direction of the successor trustee. Her objections related to accounting matters forming the basis of Lillian's request for a decree for a lien in the sum of $6,919.13 upon the interest of Jessie in the trust estate. On September 30, 1949, Lillian and Jessie entered into an agreement wherein the former agreed to a reduction by $2,480 of her claim of $6,919.13 against the latter, or to the amount of $4,439.13, and, further, wherein the former agreed to sell to the latter, and the latter agreed to buy, the interest of the former in the Crest Hotel, including real estate, furnishings, cash, and accounts and any claims which the former might have against the latter for $33,700. Thereafter, and preliminary to any transfers under the foregoing agreement of September 30, 1949, and about December 7, 1949, the then counsel for Lillian obtained a title report from Spokane Title Company. This report contained a note to the effect that the Title Company had been informed that the Seattle-First National *101 Bank had refused to serve as successor trustee of the estate of Mary Fotheringham and that, if such was the case, a formal statement to that effect should be obtained from the bank and filed in the estate proceeding "and order of court obtained terminating the trust." The note to the report further stated that in the meantime the Title Company would not insure against the rights of the bank as successor trustee. On December 9, 1949, the bank executed a waiver in which it declined appointment as successor trustee and waived any claim thereto. Thereafter, on December 20, 1949, the foregoing waiver of the bank was filed in the Superior Court of the State of Washington in and for the County of Spokane in the matter of the estate of Mary Fotheringham. On the same day, the following also was filed in the court in the same proceeding: (1) "Stipulation" filed by Lillian and Jessie that the "Final Report of Trusteeship" of the estate of Mary Fotheringham filed by Lillian on or about March 11, 1949, be modified so as to show a charge of $4,960 against the interest of Benjamin H. Fotheringham, reducing his interest from $16,724.01 to $11,764.01, and to show a reduction of a lien on the interest *102 of Jessie from $6,919.13 to $4,439.13, and that, except as thus modified, said report be approved. (2) "Petition for Termination of Trust" created by the will of Mary Fotheringham, filed by Lillian and Jessie as beneficiaries of the trust. On the same day, December 20, 1949, the court entered an order modifying and, as so modified, approving the "Final Report of Trusteeship" in accordance with the above-mentioned stipulation. Further, on the same day, the court, pursuant to the above-mentioned petition, entered an order terminating the trust created by the will of Mary Fotheringham. On December 19, 1949, Lillian Fotheringham, individually and as executrix of the estate of Benjamin H. Fotheringham executed a warranty deed to an undivided one-half interest in the Crest Hotel, exclusive of furnishings, to Jessie Victoria Fotheringham for $22,005.36. The deed was recorded on January 4, 1950. Fiduciary income tax returns were filed for the Mary Fotheringham Trust for the years 1946 through 1949, in which were reported the income received and the expenses incurred by the trust in its operation of the Crest Hotel. The returns were prepared from books and records kept on the accrual *103 basis. The respondent determined that the income of the Mary Fotheringham Trust for the years 1946 and 1947 was distributable in equal amounts to Benjamin H. Fotheringham and the estate of Dalton D. Fotheringham. On March 12, 1947, Benjamin H. Fotheringham filed his income tax return for 1946. The amount of gross income stated in that return was $2,835. The notice of deficiency was mailed by the respondent to Benjamin's estate on February 27, 1951. The only income tax return shown by the record to have been filed for the estate of Dalton D. Fotheringham for 1946 was filed on December 18, 1950. Opinion The parties are in agreement that the will of Mary Fotheringham created a trust. However, they are in disagreement as to its character. The petitioners take the position that the trust was a mere passive trust from its inception. In the alternative, they take the position that, if it was an active trust at its inception, it became passive either as a result of the agreement of September 24, 1939, between Benjamin, Dalton, and Bernard or as a result of the agreement of October 26, 1939, between Benjamin and Dalton. The respondent's position is that from its inception until its *104 termination by the court order on December 20, 1949, the trust was an active trust. In her will, Mary Fotheringham directed that upon the completion of the probate proceedings of her estate the trustee, her son Benjamin, whom she also had named executor, should take into his possession all of the remaining personal property and real estate, exercise supervision thereof, collect all rents or monies due the estate from every source and apply them toward the performance of his trust, namely, toward payment of her indebtedness until such indebtedness was fully paid and thereafter divide them equally between her three sons. She further directed that at the expiration of 20 years after her death all the property then in the hands of the trustee should be divided into three equal portions and each of her three sons be given one of such portions. Prior to and at the time of her death, Mary Fotheringham was engaged in the operation of the Crest Hotel. Following her death, Benjamin, first as executor and thereafter as trustee until his death in 1948, operated the hotel. Such operation not only was not inconsistent with the provision of Mary Fotheringham's will but under the circumstances presented *105 may properly be construed as coming well within the intendment of the testator. Because of the adverse situation which developed with respect to the Egyptian Theatre property after the execution by Mary Fotheringham of her will and subsequent to her death, the provision of her will prohibiting the sale or distribution of that property for a period of 20 years after her death was found by the court to be obnoxious to the best interests of the trust estate. Accordingly the court decreed a modification of the trust to the extent of authorizing a sale of the property. In contemplation of such authorization and the subsequent sale of the Egyptian Theatre property, Bernard on September 24, 1939, entered into an agreement with his brothers wherein he agreed to accept a payment of $11,000 out of the proceeds of sale of the property in lieu of all of his interest in the trust estate rather than having the full proceeds of sale applied on the indebtedness of the estate as provided by the terms of the will. The court decreed a further modification of the trust by authorizing the trustee to make payment of $11,000 to Bernard out of the proceeds realized from the sale of the theatre property. *106 After the sale, payment of the $11,000 was made to Bernard from the proceeds of sale. Although some of the language used in the agreement of September 24, 1939, and in the court decree refers to the transaction as a purchase by Benjamin and Dalton of Bernard's interest in the property of the trust, other language of the court decree refers to the $11,000 as paid to Bernard as payment of his interest in the trust property. In the situation presented, the payment was a present distribution to Bernard of an agreed stated amount of trust property, in lieu of the portion of the trust property he would be entitled to upon termination of the trust, and left Benjamin and Dalton as the sole owners of interests in the trust estate. We find nothing in the agreement of September 24, 1939, or in the court's modification of the trust that changed the character of the trust. While the agreement of September 24, 1939, provided for a termination of Bernard's interest in the trust, it contained nothing to indicate that the trust also was to be terminated as to the interests therein of Benjamin and Dalton. Subsequent to the above-mentioned modifications, no other modification of the terms of the trust *107 were made prior to the termination of the trust by court order on December 20, 1949. Aside from providing for certain charges and credits which the parties apparently deemed necessary to equalize their respective interests in the trust, the agreement of October 26, 1939, between Benjamin and Dalton appears to have been primarily an agreement as to the manner in which they desired that certain matters relating to the operation of the Crest Hotel and other trust property and the profits therefrom should be handled after Bernard had been paid the $11,000 heretofore mentioned. We find nothing in the agreement to indicate that it was intended to, or that it did, change the character of the trust, or modify the terms of, or terminate, the trust. In fact, the agreement specifically recognized that Benjamin theretofore had been managing the hotel and recited that he was to continue to do so. Furthermore it recited that he "in his capacity as trustee" should open a bank account in which all money collected should be deposited, and from which all disbursements, except of minor amounts, should be made. It is true that in an action brought by them in April 1946 for the purpose of removing *108 an alleged cloud on the title of the Crest Hotel, and in which a default decree was entered against the defendant, Benjamin, Lillian, and Jessie Fotheringham, as plaintiffs, alleged that they were the owners in fee simple of the hotel. It is also true that among the items listed as assets in the inventories and appraisements of the estates of Dalton and Benjamin, respectively, were one-half interests in the Crest Hotel and one-half interests in the furnishings in that hotel. In our opinion the foregoing standing alone do not establish that the character of the trust had been changed from what it was at the time of the inception of the trust or that the agreement between Benjamin and Dalton had effected a termination of the trust. In fact, in the fiduciary income tax returns filed for the trust for the years 1946 through 1949, the Crest Hotel and the furnishings therein are shown as property owned by the trust. From a consideration of the record before us, we are of the opinion that the Mary Fotheringham Trust was an active trust throughout its existence, and that the trust until its termination on December 20, 1949, owned the Crest Hotel. Hayward v. Tacoma Savings Bank & Trust Co., 88 Wash. 542, 153 P. 352; *109 Fowler v. Lanpher, 193 Wash. 308, 75 P. 2d 132. In view of the foregoing holding and in the absence of anything to indicate that the income of the Mary Fotheringham Trust for 1946 and 1947 was otherwise distributable, we are unable to find that the respondent erred in determining that one-half of the income of the trust for those years was distributable to the estate of Dalton D. Fotheringham. In their petitions, the following petitioners assigned error as to the respondent's determination of the amounts of their shares of the distributable income of the Mary Fotheringham Trust for the indicated years: Estate of Benjamin H. Fothering-
ham
1947
Jessie Victoria Fotheringham
1948 and 1949
Lillian Fotheringham
1949 on the ground that respondent had failed to allow additional depreciation that was properly allowable. These assignments of error were denied by respondent. The respondent's determinations of the petitioners' shares of the distributable income of the Mary Fotheringham Trust were based upon an investigation he made of the affairs of the trust for the years in controversy. A copy of the report of that investigation was not put in evidence, *110 nor does the record otherwise show the respondent's computation of the distributable income of the trust for such years, nor does it show the amounts of depreciation he determined to be allowable in those years. In view of the foregoing and since the record fails to disclose the probable useful life on any date of any of the trust properties, or the proper applicable rate or rates to be employed in computing the depreciation allowable with respect to such properties, we are unable to determine what amounts were properly allowable to the trust as depreciation for the years in question, and further we are unable to determine the amounts of the petitioners' shares of the distributable income of the trust for such years. The petitioners had the burden of showing that the respondent's action was erroneous in the respects claimed, and since they have failed to furnish evidence required to discharge that burden, the respondent's determinations as to these issues are sustained. The petitioners, relying on certain evidence submitted by them, contend that in determining the distributable income of the Mary Fotheringham Trust for the years 1946, 1947, and until September 19, 1948, the date *111 of death of Benjamin H. Fotheringham, the trust should be allowed a deduction of $500 per month as the fair and reasonable value of the services rendered by Benjamin and his wife Lillian in managing the Crest Hotel, and that after the death of Benjamin a deduction of $300 per month should be allowed for the remainder of 1948 and the year 1949 as the fair and reasonable value of the services rendered by Lillian in managing the hotel. Except for showing that the respondent determined a salary of $2,400 for Lillian for 1949, the record does not disclose what amounts the respondent has allowed for the services of Benjamin and Lillian in determining the income of the trust for the years in question. However, in view of the action of the petitioners in now contending for the allowance of the above-stated amounts, we conclude that the respondent's allowances were in smaller amounts. The record fails to show that the amounts here contended for by petitioners were ever accrued on the books of the trust, or were ever authorized or approved by the court. One of the objections made by Jessie to the Final Report of Trusteeship, filed by Lillian, in the matter of the estate of Mary Fotheringham, *112 was that the agreement of October 26, 1939, between Dalton and Benjamin respecting the latter's management of the Crest Hotel provided that he and Lillian were to receive $160 per month and an apartment in the hotel for their services in managing the hotel and that contrary to the agreement Benjamin and Lillian had paid themselves sums of money in excess of the amount provided for in the agreement. The agreement of September 30, 1949, between Lillian and Jessie in which Lillian agreed to reduce her claim against Jessie from $6,919.13 to $4,439.13 recognized the correctness of Jessie's objection, and the reduction was effected on the basis of the objection. The Final Report of Trusteeship was modified by the court to give effect to the agreed reduction. In view of the situation presented, we are unable to sustain the contention of the petitioners as to the deductions to be allowed for the services of Benjamin and Lillian. The petitioners contend that the expiration of the 3-year period of limitations contained in section 275(a) of the Internal Revenue Code of 1939 for the assessment of tax bars the assessment of the deficiencies determined by the respondent against the estates of *113 Benjamin and Dalton for 1946. The respondent contends that in view of the provisions contained in section 275(c), the deficiency determined against the estate of Benjamin may be assessed and collected. Pertinent portions of section 275 are set out below. [1]
In his income tax return for 1946 which was filed on March 12, 1947, Benjamin stated that his gross income for the year was $2,835. The respondent has determined that in addition *114 to the income stated in the return Benjamin also had income of $2,982.63, representing distributable income from the Mary Fotheringham Trust. The effect of our holdings above is to sustain the foregoing determination of the respondent. Since the $2,982.63 omitted by Benjamin is in excess of 25 per cent of the amount stated in his return, the 5-year period of limitations provided in section 275(c) of the Code is applicable, and since the deficiency notice was mailed on February 27, 1951, the period for assessment of tax for 1946 has not expired. In the petition of the estate of Dalton D. Fotheringham error is assigned as to respondent's action in failing to determine that the assessment of any deficiency in income tax of the estate for 1946 is barred by the expiration of the period of limitations. In support of that assignment of error it is alleged as a fact that "The time for proper assessment against this taxpayer expired on March 15, 1950, as to the calendar year 1946." The foregoing assignment of error and the allegation of fact were denied by respondent in his answer. The deficiency notice was mailed by the respondent to the estate on May 11, 1951. At the hearing the petitioners *115 did not offer in evidence any income tax return filed for the estate for 1946 or any copy of such return. Nor did they offer any evidence as to the date or dates on which any income tax return or returns for 1946 were filed for the estate. At the hearing respondent put in evidence, as the return upon which the deficiency notice was based, an income tax return for the estate for 1946 which was executed by Donald Bernard Fotheringham, executor of the estate, on December 1, 1950. This return bears a stamp showing that it was received by a revenue agent in the Seattle Division on December 18, 1950, and shows no net income taxable to the estate. Counsel for the petitioners objected to the admission of the return in evidence on the ground that it was a "corrective" return, which it is alleged in the petition, but denied in the answer, was filed at the suggestion of a revenue agent. On brief the petitioners contend that the 3-year period provided in section 275(a) of the Code for assessment of income tax for 1946 had expired at the time of the mailing of the notice of deficiency. The respondent makes no argument on brief directed to this issue. However, from certain findings of fact which *116 he has proposed it appears that his position is that the 5-year period provided in section 275(c) of the Code is applicable. The bar of the statute of limitations on assessment is an affirmative defense and the burden of proving that the assessment is barred thereby by the expiration of the 3-year period as contended by petitioners, was on the petitioners. Edward M. Lawrence, 3 B.T.A. 40; Refiners Production Co., 43 B.T.A. 481. If the 3-year period had expired at the time of mailing of the notice of deficiency, the burden was on the respondent to show that the 5-year period was applicable. Elvina Ratto, 20 T.C. 785, Elsie SoRelle, 22 T.C. 459. Whatever may have been the situation as to the filing of a return for the estate for 1946 at an earlier time than December 18, 1950, the fact remains that the latter was the earliest and only date, shown by the record, on which a return for 1946 was filed. If, in fact, a return for 1946 was filed on or before March 15, 1947, as implied in the estate's allegation of fact, it was incumbent upon the petitioners to establish such fact. This they have failed to do. Consequently, since the only *117 return shown to have been filed for 1946 was filed on December 18, 1950, and since the notice of deficiency was mailed on May 11, 1951, we conclude that the 3-year period of limitations had not expired at the time of the mailing of the notice of deficiency. Having reached the foregoing conclusion, it becomes unnecessary to consider the respondent's position as to the applicability of the 5-year period provided in section 275(c). By amendments to his answers, the respondent has asked that the deficiencies determined by him be increased in the case of the following petitioners for the indicated years: Estate of Benjamin H. Fothering-
ham
1946
Estate of Dalton D. Fotheringham
1946 and 1947
Jessie Victoria Fotheringham
1948
Lillian Fotheringham
1949 As we understand the respondent's position, he rests his claim for increased deficiencies on the ground that in computing the distributable income of the Mary Fotheringham Trust for the years in question he allowed excessive deductions for depreciation of trust property and accordingly failed to determine the correct amounts of petitioners' shares of distributable income from the trust. The claim for an increased deficiency *118 for 1949 is the case of Lillian Fotheringham is rested on the further ground that respondent failed to compute the proper amount of depreciation to be taken into consideration in computing the gain realized by the estate of Benjamin from the sale in that year of its interest in the assets of the Mary Fotheringham Trust to Jessie Victoria Fotheringham. As heretofore indicated, the record fails to disclose the probable useful life on any date of any of the trust properties, or the proper applicable rate or rates to be employed in computing the depreciation allowable with respect to such properties. In the absence of that information, we are unable to determine the proper allowable amounts of depreciation for the years and for the purposes in controversy. The respondent had the burden of proof with respect to his claims for increased deficiencies. Since he has failed to discharge that burden, his claims are denied. Decisions will be entered for respondent. Footnotes
1. The proceedings of the following petitioners are consolidated herewith: ESTATE OF DALTON D. FOTHERINGHAM, DONALD BERNARD FOTHERINGHAM, EXECUTOR, Docket No. 34461; JESSIE VICTORIA FOTHERINGHAM, Docket No. 34462; LILLIAN FOTHERINGHAM, Docket No. 34564; and JESSIE V. FOTHERINGHAM, Docket No. 47924.↩
1. SEC. 275. PERIOD OF LIMITATION UPON ASSESSMENT AND COLLECTION. Except as provided in section 276 - (a) General Rule. - The amount of income taxes imposed by this chapter shall be assessed within three years after the return was filed, and no proceeding in court without assessment for the collection of such taxes shall be begun after the expiration of such period. * * *
(c) Omission From Gross Income. - If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 per centum of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 5 years after the return was filed.↩